Brian Yates (SBN 210667)
Xiyan Zhang (*Pro Hac Vice*)
xzhang@stratumlaw.com
Pete Wolfgram (*Pro Hac Vice*)
pwolfgram@stratumlaw.com
STRATUM LAW LLC
2424 E. York St. Ste. 223
Philadelphia, PA, 19125

Attorneys for Defendants
JIANYONG WEN, LUN XU,
XUDUO WEN, ALVANTOR INDUSTRY COMPANY, LTD. and
EIGHTEENTEK, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNDER THE WEATHER, LLC, an Ohio limited liability company,<br><br>Plaintiff/Counterclaim Defendant,<br>v.<br><br>JIANYONG WEN, an Individual, LUN XU, an individual, XUDUO WEN, an individual, ALVANTOR INDUSTRY COMPANY, LTD., a California corporation, and EIGHTEENTEK, INC., a California corporation,<br><br>Defendants/Counterclaimants. | Case No. 2:23-cv-08343-MRA-E<br><br>**Date Action Filed: October 4, 2023**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Honorable Monica R. Almadani<br>Date: August 11, 2025<br>Time: 1:30 p.m.<br>Crtrm.: B – 9th Floor<br><br>[Filed concurrently with Statement of Uncontroverted Facts; Declarations of Jianyong Wen, Xuduo Wen, and Lun Xu; Proposed Judgment] |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that in accordance with the Court's Order (ECF 143) setting forth a dispositive motion noticing deadline, on August 11, 2025, at 1:30 p.m., before United States District Judge Monica Ramirez Almadani at 411 W. Fourth St. Santa Ana CA 92701, Courtroom 9B, that Jianyong Wen, Lun Xu, and Xuduo Wen (the "Individual Defendants") will and hereby do move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) as to the "alter ego" allegations stated in Plaintiff Under The Weather, LLC's ("UTW") First Amended Complaint ("FAC"). The Individual Defendants bring this motion because there is no genuine dispute they are the alter egos of the "Corporate Defendants," Alvantor Industry Company, Ltd. and EighteenTek, Inc.

This Motion is based on this Notice and Motion; the accompanying Memorandum of Points and Authorities; all documents on file in this action; and such other matters as may be presented to this Court. The Individual Defendants request that the Court grant summary judgment in their favor. This Motion is made following the conferences of counsel pursuant to L.R. 7-3, including most recently on June 23, 2025.

Dated: June 30, 2025

Respectfully submitted,

By:/s/ Xiyan Zhang________
Xiyan Zhang (Pro Hac Vice)
Pete S. Wolfgram (Pro Hac Vice)
STRATUM LAW LLC
2424 E. York St. Ste. 301D
Philadelphia, PA
xzhang@stratumlaw.com
pwolfgram@stratumlaw.com
Attorneys for Defendants Jianyong Wen, Lun Xu, Xuduo Wen, Alvantor Industry Company Ltd., and EighteenTek, Inc.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ III

TABLE OF AUTHORITIES ........ IV

I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 1

III. ARGUMENT ........ 6

A. LEGAL STANDARD ........ 6

1. *Alter Ego Liability Must Be Supported With Sufficient Facts To Overcome The Presumption Of Corporate Separateness* ........ 7

2. *Unity of Interest: A Clear Separation Between the Corporate and Individual Defendants Exists* ........ 10

2) No Inequitable Result Will Follow if the Corporate Veil is Not Pierced ........ 16

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Abbott*,
321 U.S. 349, 362, 64 S. Ct. 531, 88 L. Ed. 793 (1944)…………………………8

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986)……………………………………………………..7

*Associated Vendors, Inc. v. Oakland Meat Co.*,
210 Cal. App. 2d 825, 838-839, 26 Cal. Rptr. 806 (1963)……………………..11

*Celotex Corp. v. Catrett,*
477 U.S. 317, 323 (1986)……………………………………………………..7

*Dole Food Co. v. Patrickson*,
538 U.S. 468, 475, 123 S. Ct. 1655, 155 L. Ed. 2d 643 (2003)…………………7

*DVI, Inc. v. Superior Court,*
104 Cal. App. 4th 1080, 1097, 128 Cal. Rptr. 2d 683 (2002)…………………16

*Fair Housing Counsel of Riverside County, Inc. et al. v. Group XIII Properties LP, et al*., 2023 U.S. Dist. LEXIS 74532 (C.D. Cal., April 27, 2023)………………9

*Gerritsen v. Warner Bros. Ent'mt*,
116 F. Supp. 3d 1104, 1143 (C.D. Cal. 2015). …………………………………17

*Gopal v. Kaiser Found. Health Plan, Inc.*,
248 Cal. App. 4th 425, 431, 203 Cal. Rptr. 3d 549 (2016)…………………10,11

*Holley v. Crank*,
386 F.3d 1248, 2004 U.S. App. LEXIS 22256 (9th Cir. Cal., 2004)…………..10

*Katzir's Floor & Home Design, Inc. v. M-MLS.COM*,
394 F.3d 1143, 1149 (9th Cir. 2004)……………………………………………...17

*Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Service, Inc.*,
736 F.2d 516, 523-524 (9th Cir. 1984)……………………………………........16

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs*.,
235 Cal. App. 3d 1220, 1249, 1 Cal. Rptr. 2d 301 (1991)………………………9

*MacPherson v. Eccleston*,
190 Cal. App. 2d 24, 27, 11 Cal. Rptr. 671 (1961)…………………………….8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)……………………………………………………..7

*Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300, 216 Cal. Rptr. 443, 702 P.2d 601 (1985)……………………8

*Minifie v. Rowley*, 187 Cal. 481, 488, 202 P. 673 (1921)……………………………………………11

*Navarro v. Data*, No. 2:20-CV-07370-SVW- SK, 2022 WL 18280359, at *4 (C.D. Cal. Dec. 7, 2022)………………………..8

*Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003)……………………………..8

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677-78 (9th Cir. 2017)…………………………………..........19

*Romero v. Macy's, Inc.*, 2016 WL 7098439, at *12 (S.D. Cal. Dec. 6, 2016)……………………………...8

*Say & Say, Inc. v. Ebershoff*, 20 Cal. App. 4th 1759, 1760, 25 Cal. Rptr. 2d 703 (1993)……………………10

*Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995 (N.D. Cal. 2001)…………………………………….…10

*Strasner v. Touchstone Wireless Repair & Logistics*, LP, 5 Cal. App. 5th 215, 224, 210 Cal. Rptr. 3d 16 (2016)……………………16

*Talbot v. Fresno-Pacific Corp.*, 181 Cal. App. 2d 425, 432, 5 Cal. Rptr. 361 (1969)…………………………...11

*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 31 Cal. Rptr. 2d 433 (1994)….………………………..17

*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285, 31 Cal. Rptr. 2d 433 (1994)……………………11

*United States v. Mohalla*, 545 F.Supp.2d 1035, 1039 (C.D. Cal. 2008)……………………………………7

*Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002)……………………………...…8

**RULES**

Fed. R. Civ. P. 56(a)............................................................6,7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Years before UTW initiated this lawsuit in 2023, Jianyong Wen, Lun Xu, and Xuduo Wen, a family residing in Los Angelis, California, formed Alvantor and EighteenTek from the ground up for the legitimate business purpose of selling distinctive tent products to the public. Statement of Facts ("SF"), 4. Through hard work, persistence, and creativity, they have achieved financial success and a sizeable market share in the tent space, as demonstrated by substantial revenues and a proven marketing campaign on Amazon, Instagram, and other major platforms. SF 9-15. Nevertheless, Plaintiff Under The Weather, LLC ("UTW"), a direct competitor, contends the Individual Defendants deliberately formed the corporate entities as undercapitalized shell companies for their personal benefit, and should therefore be held personally liable for the Corporate Defendants' alleged infringing activity under an alter ego theory of liability.

Piercing the corporate veil is the "rare exception," however, and does not apply where the evidence so clearly shows the corporate entities have substantial assets and conduct legitimate business activity, as is the case here. UTW's veil piercing claims are an aggressive attempt to intimidate a business rival and to obtain a source of collecting a judgment, should UTW prevail on the merits. These are not legitimate reasons to disregard the corporate form, according to Ninth Circuit precedent.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Jianyong Wen and Lun Xu are a married couple living in Los Angeles, California with their two children. SF 1. Xuduo Wen is their eldest child

who's currently pursuing a PhD degree in Biostatistics at the University of Southern California. SF 2.

In 2011, Jianyong Wen and Lun Xu founded Alvantor to market and sell their original tent designs to the public, drawing on their nearly 30 years of experience in the industry. SF 4. Alvantor was registered with the California Secretary of State on December 20, 2011, and remains in good standing. SF 5. Alvantor's business address is 1931 Santa Anita Avenue, South El Monte, California 91733. SF 7.

Over the next decade, the Individual Defendants developed Alvantor into a recognized tent brand. SF 8. Alvantor sells a range of tents under the "Alvantor Store" on Amazon.com, which has received over 7700 customer reviews to date. SF 9. 75% of these are five-star reviews. Id. In comparison, the most popular listing on Plaintiff UTW's competing "WeatherPod" Store has collected approximately 2200 reviews to date. SF 10. A screenshot of Alvantor's Amazon Storefront is shown below:

Alvantor®




**The Alvantor Storefront on Amazon.com (SF 9)**

The Alvantor Amazon store states, “we are a family with a passion for tents and design. Founded in Southern California in 2011, Alvantor is a brand that specializes in the research and development of outdoor and household products.” SF 12. To protect their innovative designs, the Individual Defendants applied for and received over 42 international and domestic patents. SF 35. These patents were subsequently licensed to the Corporate Defendants. Id. Moreover, Alvantor advertises on several platforms, including Walmart.com, Wayfair.com, Target.com, Homedepot.com, Lowes.com, Kohls.com, TikTok, Instagram and Facebook. SF 14. To date, Alvantor has over 4000 “followers” on Instagram, having posted dozens of promotional videos on that site. SF 15. Alvantor’s Youtube Channel has over 700 subscribers and features over a dozen promotional videos. SF 11. Alvantor posted its first video over six years ago; its most popular video has 349,000 views to date. SF 13. The Individual Defendants also filed a trademark application for the brand “Alvantor,” which issued as Trademark No. 87609401. SF 16.

Encouraged by the success of Alvantor, the Individual Defendants decided to form a sister tent company, EighteenTek, in January 2020. SF 18. EighteenTek was registered with the California Secretary of State, and remains in good standing. SF 19. EighteenTek, operating out of the South El Monte address, also sells its tent products on Amazon. SF 24. EighteenTek’s Amazon Storefront is shown below:

EighteenTek®




**EighteenTek Amazon Store (SF 24)**

The Individual Defendants received trademark protection for the brand "EighteenTek" in 2020. SF 23. EighteenTek markets its products on Youtube, among other digital platforms. SF 24. The federally registered "Alvantor" and "EighteenTek" trademarks are clearly labeled on all the Corporate Defendants' tent products, packaging, and webpage product listings, shown by way of example below:




**Screenshot of Alvantor's Product Listing on Amazon (SF 9)**

Significantly, the Corporate Defendants have no debt, and have always satisfied their financial obligations to vendors and other third parties. SF 43. Alvantor's revenues for 2022 and 2023 were $15,087,634 and $9,120,938, respectively. SF 31-32. EighteenTek's combined revenues during the last four years were over $5 million. SF 31, 33. As of 2023, the Corporate Defendants also have domestic assets of nearly $6 million in the form of cash and inventory, as confirmed by the Corporate Defendants' tax documents prepared by their certified accountant, and produced in this case. SF 29.

All corporate expenses (the lease at the South El Monte facility, product procurement, etc.) are paid through the corporate entities' bank accounts. SF 42. On the other hand, the Individual Defendants maintain separate bank accounts for personal expenses, and live in the family residence in Los Angeles. SF 37.

On October 4, 2023—more than ten years after the Individual Defendants founded Alvantor—Plaintiff UTW filed its Complaint against the Corporate Defendants, alleging trademark infringement, unfair competition, false advertising, false designation of origin, false marking, and patent infringement. ECF 130. Specifically, UTW alleges the Corporate Defendants infringed its WEATHERPOD and UNDER THE WEATHER marks "in connection with the sale, offering for sale, distribution, or advertising of transparent personal enclosures to the public on Amazon.com," among other ecommerce platforms. Id., ¶ 28. UTW also alleges the Corporate Defendants' products infringe its four design patents. Id., ¶¶ 114-129.

Plaintiff's First Amended Complaint, filed on March 10, 2025, re-alleges the same claims, and asserts a theory of alter ego liability between Alvantor and EighteenTek and each of the Individual Defendants. *See* FAC, ¶¶ 46-57. The FAC alleges that EighteenTek and Alvantor are the alter egos of the Individual Defendants, and that maintaining the corporate form and treating them as separate entities would lead to an inequitable result. Id., ¶¶ 46.

## III. ARGUMENT

### A. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts may grant summary judgment in a party's favor upon all or "part of" a party's claim and apply the same standard in doing so. Fed. R. Civ. P. 56(a); *see also United States v. Mohalla*, 545 F.Supp.2d 1035, 1039 (C.D. Cal. 2008) (holding that "[t]he standard and procedures for a motion for partial summary judgment are the same as for summary judgment of a claim."). The movant bears the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). After the moving party meets its initial burden to show the absence of evidence to support the non-moving party's case, the burden shifts to the nonmoving party to demonstrate that there are "genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. If the non-moving party fails to submit sufficient facts showing genuine issues for trial, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### 1. *Alter Ego Liability Must Be Supported With Sufficient Facts To Overcome The Presumption Of Corporate Separateness*

The judicially-created equitable remedy of "piercing the corporate veil," thereby exposing the Individual Defendants to liability for corporate debts, is an extreme one which courts will apply "only in exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S. Ct. 1655, 155 L. Ed. 2d 643 (2003)("[P]iercing the corporate veil. . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances . . . ."); *Anderson v. Abbott*, 321 U.S. 349, 362, 64 S. Ct. 531, 88 L. Ed. 793 (1944)("Limited liability is the rule, not the exception . . . ."); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003)(explaining that "'the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require.'") (quoting *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300, 216 Cal. Rptr. 443, 702 P.2d 601 (1985)).

To successfully invoke the alter ego doctrine, the plaintiff must establish two elements: (1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals *no longer exist* and (2) that failure to disregard the corporation would result in fraud or injustice. *Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002)(citing *Mesler*, 39 Cal. 3d at 300)(emphasis added). It is the plaintiff's burden to overcome the presumption of the separate existence of the corporate

entity. *MacPherson v. Eccleston*, 190 Cal. App. 2d 24, 27, 11 Cal. Rptr. 671 (1961).

Summary judgment is appropriate when a plaintiff fails to raise a triable issue regarding either factor. *Romero v. Macy's, Inc.*, 2016 WL 7098439, at *12 (S.D. Cal. Dec. 6, 2016). "California law provides that the party seeking to have the corporate entity disregarded has the burden of proving that the alter ego theory should be applied." *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326, 338 (9th Cir. 1978); *Navarro v. Data*, No. 2:20-CV-07370-SVW- SK, 2022 WL 18280359, at *4 (C.D. Cal. Dec. 7, 2022) (granting summary judgment in favor of defendant on plaintiff's alter ego theories "due to th[e] lack of evidence attached to Plaintiffs' opposition papers" because "the record . . . does not support these theories of liability").

Justice Jesus G. Bernal, in a recent decision, correctly stated that most of the California cases in the Central District do not concern the instant issue, whether an *individual* defendant can be held liable for the alleged conduct for the corporation, for alter ego liability is generally "reserved for the *parent-subsidiary relationship*." *See Fair Housing Counsel of Riverside County, Inc. et al. v. Group XIII Properties LP, et al*., 2023 U.S. Dist. LEXIS 74532 (C.D. Cal., April 27, 2023) citing *Las Palmas Assocs. v. Las Palmas Ctr. Assocs*., 235 Cal. App. 3d 1220, 1249, 1 Cal. Rptr. 2d 301 (1991)(emphasis added). Justice Bernal, in dismissing the alter-ego claims on summary judgment, identified the Ninth Circuit's "narrow paradigm" of individual liability:

> "From the Court's review of the case law, the situations in which California courts have held individuals liable under the alter ego liability tend to fall within a narrow paradigm: **when an individual forms a corporate entity, such as an LLC, that is**

> **essentially just a corporate shell for his or her personal affairs**, especially one that represents an abuse of the corporate form because it is **deliberately undercapitalized** such that its creditors or the victims of the individual's tortious conduct would be denied relief unless they can hold the individually personally liable." *Fair Housing Counsel of Riverside County, Inc.,* 2023 U.S. Dist. LEXIS 74532 at 76, emphasis added.

This reasoning is consistent with the first prong of the alter-ego test, which requires such a unity of interest and ownership that "the separate personalities of the corporation and the individuals *no longer exist."* Justice Bernal identified the central factors present in the cases holding individuals liable that indicate the disregard of the corporate form altogether.

In *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995 (N.D. Cal. 2001), for example, the individuals could be liable as alter egos for their corporate entities in large part because they held themselves out as personally liable for certain company debts and made personal payments for one corporation's debt. In *Holley v. Crank*, 386 F.3d 1248, 2004 U.S. App. LEXIS 22256 (9th Cir. Cal., 2004) the individual owner was plausibly the alter ego of a corporate entity because he was its sole shareholder, used his personal tax identification number on corporate tax returns, the corporation was "very thinly capitalized," and wholly disregarded corporate formalities in at least one transaction, such that there was evidence that the owner viewed the corporation not as a "distinct entity from himself." Id. at 675. And in *Say & Say, Inc. v. Ebershoff,* 20 Cal. App. 4th 1759, 1760, 25 Cal. Rptr. 2d 703 (1993), the evidence was overwhelming that any corporate entity was a complete sham—the defendant essentially admitted he had formed it with fraudulent intentions. See id. at 1760-66.

None of these central factors exhibiting a clear abuse of the corporate form

are present here. It is immediately obvious that the Individual Defendants created Alvantor and EighteenTek for the separate, legitimate business purpose of selling tents to the public.

**2. *Unity of Interest: A Clear Separation Between the Corporate and Individual Defendants Exists***

As noted, alter ego liability "applie[s] when one corporation uses another to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *Gopal v. Kaiser Found. Health Plan, Inc.*, 248 Cal. App. 4th 425, 431, 203 Cal. Rptr. 3d 549 (2016). The party seeking to impose alter ego liability, here Plaintiffs, bear the burden of proof on this issue. *See Minifie v. Rowley*, 187 Cal. 481, 488, 202 P. 673 (1921). "Alter ego is an extreme remedy, sparingly used." *Sonora*, 99 Cal. Rptr. 2d at 836.

Among the factors to be considered under the unity of interest prong are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-839, 26 Cal. Rptr. 806 (1963). Other factors include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. *See Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285, 31 Cal. Rptr. 2d 433 (1994). No one characteristic governs, but courts look at all relevant circumstances to determine whether the doctrine should be applied. *Talbot v. Fresno-Pacific Corp.*, 181 Cal. App. 2d 425, 432, 5 Cal. Rptr. 361 (1969)."

As an initial matter, the fact that the Corporate Defendants are UTW's direct **competitors** in the tent market belies the notion that the Individual Defendants deliberately formed Alvantor and EighteenTek as shell companies for their personal affairs to evade liability. Alvantor was created in 2011, more than a decade before UTW filed its Original Complaint in 2023 for patent and trademark infringement. SF 4. By then, the Alvantor and EighteenTek trademarked brands had gained recognition among the public, as evidenced by the popularity of Alvantor's Amazon storefront, Instagram profile, and Youtube videos, in addition to millions of dollars in product sales. SF 13-14, 24, 31. The following facts further establish that the Corporate Defendants were formed as legitimate conduits through which to transact the Individual Defendants' family tent businesses.

Under their trademarked "Alvantor" and "EighteenTek" brand names, the Corporate Defendants have successfully marketed and sold their products on Amazon, Instagram, Facebook, and TikTok, among other sales channels and social media platforms. SF 8-15, 24. In fact, one of Alvantor's Amazon product listings has garnered substantially more customer reviews (7,700) than any of UTW's product listings. SF 9. The federally registered "Alvantor" and "EighteenTek" trademarks are clearly labeled on all the Corporate Defendants' tent products, packaging, and webpage product listings. SF 26. This demonstrates that, far from erasing the line between the corporate and individual personalities, Alvantor and EighteenTek have achieved commercial success largely *because* of their distinctive brands and marketing efforts. There's no evidence to demonstrate that the Corporate Defendants represented to the public as the Individual Defendants, rather than as EighteenTek and Alvantor.

Over the last fourteen years, the Individual Defendants have consistently created new tent designs to stay ahead of the market, obtaining over 40 issued patents to protect their inventions. SF 35. These patents were licensed to the Corporate Defendants. Id.

UTW has provided no evidence whatsoever that the Corporate Defendants are undercapitalized. Alvantor received an initial cash infusion of $1,038,472 from its stockholders in 2011. SF 20. Alvantor's revenues and end-of-year total assets for years 2012-2023 are listed in the table below:

| | **Total Assets** | **Gross Receipts** |
|---|---|---|
| 2012 | $1,077,611 | $653,831 |
| 2013 | $1,105,849 | $2,738,306 |
| 2014 | $1,115,827 | $2,727,794 |
| 2015 | $1,135,037 | $2,225,026 |
| 2016 | $1,172,868 | $2,010,517 |
| 2017 | $1,268,999 | $2,057,221 |
| 2018 | $1,336,512 | $2,431,352 |
| 2019 | $1,500,605 | $3,060,296 |
| 2020 | $1,550,307 | $11,903,966 |
| 2021 | $1,647,300 | $15,087,634 |
| 2022 | $1,176,585 | $12,673,763 |
| 2023 | $4,220,794 | $9,120,938 |

SF 29, 30, 31, 32.

EighteenTek has been in business since 2020; its revenues and end-of-year total assets for years 2020-2023 are listed in the table below:

| | **Total Assets** | **Gross Receipts** |
|---|---|---|
| 2020 | 261,179 | 93,917 |
| 2021 | 64,314 | 453,938 |
| 2022 | 353,496 | 1,669,307 |
| 2023 | 1,642,909 | 2,887,937 |

SF 29, 30, 31, 33.

Critically, neither Alvantor or EighteenTek have any debt and maintain positive balance sheets, as confirmed by the most recent tax filings prepared by their CPA. SF 6, 29, 30. Alvantor and EighteenTek collectively have nearly $5.8 million in net equity and assets, based on their most recently filed tax statements. SF 29, 30. There is no evidence that the Corporate Defendants failed to fulfill their financial obligations to anyone throughout their combined fourteen years of business. SF 43. It stands to reason that the Corporate Defendants have achieved such financial success and stability as a result of always maintaining an adequate amount of assets to maintain and carry on their businesses.

The Individual Defendants never held themselves out as personally liable for the debts of the Corporate Defendants. SF 38. The Individual Defendants maintain separate bank accounts. SF 36. UTW has offered no credible evidence they ever commingled personal funds with those of the Corporate Defendants, and vice versa. The Corporate Defendants pay all business-related expenses from their corporate bank accounts. SF 42.

The Corporate and Individual Defendants file regular, separate tax returns, which have been produced. The Corporate Defendants have always paid franchise tax in a timely manner. SF 17, 25. To date, the Corporate Defendants currently have eleven employees, and have maintained payroll and taxes since 2011. SF 27, 28. The Corporate Defendants also maintain separate inventory lists; the Individual Defendants do not personally own the inventory. SF 40. The Individual Defendants maintain a private residence apart from the corporate offices in South El Monte. SF 3.

EighteenTek and Alvantor were properly registered with the California Secretary of State. SF 5, 19. These entities have always remained in good standing, and have maintained adequate corporate records throughout their existence in the form of Articles of Incorporation and amendments thereto. Id. Alvantor and EighteenTek were thus properly formed, corporate formalities were observed, corporate records were maintained, and corporate tax returns and other state filings were made.

These undisputed facts—the marketing campaigns, IP portfolio, and substantial revenues and assets declared in federal tax filings—undermine the notion that the Individual Defendants created Alvantor and EighteenTek as deliberately undercapitalized "corporate shell[s]" to avoid personal liability. The Corporate Defendants were active and operating more than a decade before the harm alleged in the FAC occurred. SF 4. The alleged conduct comes nowhere close to "the level of obliterating the line between the individuals, on the one hand, and the corporate entities on the other," such that the separate personalities of the corporations and the individuals no longer exist.

The FAC alleges "one or more of the Individual Defendants would be paid

solely by Alvantor during certain months of the year and then be paid solely by EighteenTek during other months of the year." FAC, ¶ 48. This argument is misplaced. Whether the Corporate Defendants each paid the Individual Defendants "during certain months of the year" is only relevant as between the liabilities between Alvantor and EighteenTek—which are already named defendants in this case—but has absolutely no bearing on whether the *Individual Defendants* commingled their own assets with those of the Corporate Defendants. "Individual shareholders *cannot* be found liable just because there are two corporations acting as a single enterprise. *See, e.g., Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Service, Inc.,* 736 F.2d 516, 523-524 (9th Cir. 1984)(emphasis added)("Uriarte Clean-Up does not appear to contest the finding that it and Developers comprise a single enterprise. That finding permits the liabilities of Developers to be attributed to Uriarte Clean-Up and vice versa. However, the stockholders cannot be held personally liable for the liabilities of the two corporations simply because they are engaged in a single enterprise.")

Similarly, the FAC's allegations that the Corporate Defendants share the same office space and officers (FAC, ¶ 54), that Alvantor and EighteenTek have allegedly been "dominated by Xu and/or Jianyong Wen" (FAC, ¶ 49), and that the "Individual Defendants would be paid solely by Alvantor during certain months of the year and then be paid solely by EighteenTek during other months of the year" (FAC ¶ 56) relates to whether Alvantor and EighteenTek engaged in a common enterprise, but is immaterial to the liability of the Individual Defendants, who live in a separate, private residence and maintain personal bank accounts. Absent evidence that the Individual Defendants deliberately undercapitalized Alvantor and EighteenTek to promote a fraud or evade liability, the mere fact that corporations

share overlapping officers and attorneys does not require an alter ego finding. *Calvert, 875 F. Supp. at 678; see also DVI, Inc. v. Superior Court,* 104 Cal. App. 4th 1080, 1097, 128 Cal. Rptr. 2d 683 (2002)("[I]nterlocking corporate officers and directors are normal attributes of a parent-subsidiary relationship."); *Strasner v. Touchstone Wireless Repair & Logistics*, LP, 5 Cal. App. 5th 215, 224, 210 Cal. Rptr. 3d 16 (2016)("[T]he mere existence of common directors is insufficient to establish alter ego . . . .")

Thus, the Individual Defendants have shown sufficient respect for corporate formalities and maintained separate and individual personalities from that of the Corporate Defendants. As such, UTW has presented insufficient evidence to meet its burden of raising a genuine dispute of material fact on the first prong of alter ego liability.

**2) No Inequitable Result Will Follow if the Corporate Veil is Not Pierced**

Even if UTW had established a genuine issue of material fact as to the unity of interest element, it has presented no evidence establishing the second element required for alter ego liability: that "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler*, 39 Cal.3d at 300. The heart of the issue is "whether justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form." Id., at 301. "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, *it is the injustice that results only when corporate separateness is illusory*." *Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004)(emphasis added)(citing *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 31 Cal. Rptr. 2d 433 (1994)).

To demonstrate an inequitable result, a plaintiff must prove that: (1) respecting separate corporate identities would "sanction a fraud or promote injustice"; and (2) the parent and subsidiary have used their separate identities in "bad faith" to avoid creditors. *Gerritsen v. Warner Bros. Ent'mt*, 116 F. Supp. 3d 1104, 1143 (C.D. Cal. 2015).

UTW offers no evidence that would establish injustice and inequity absent the piercing of the corporate veils, stating only in conclusory fashion: "upholding Alvantor and EighteenTek as separate corporate entities would lead to an inequitable result…[t]he amounts of funds in Alvantor and EighteenTek's bank accounts are nowhere near sufficient in view of each company's costs and nowhere near sufficient to pay for debts that may arise in the normal course of business, such as the asserted damages in the present litigation." FAC, ¶ 56.

However, UTW has offered no evidence to prove undercapitalization, or that it cannot meet its normal business expenses. The Corporate Defendants have operated a combined fourteen years, have no debt, and regularly file state and federal taxes demonstrating substantial revenues. SF 29-33. The Corporate Defendants have combined net assets and equity over <u>$5 million</u>, as confirmed by tax filings dating back to 2011, which have been produced. SF 29. Alvantor received over $1 million in startup capital in 2011. SF 20. There are no unsatisfied judgments or liens against the Corporate Defendants. SF 44. The Corporate Defendants are fully able to respond to any damages award UTW may recover in this action.

The Ninth Circuit has held that a corporation was <u>not</u> undercapitalized where it had "always been able to satisfy judgments against it," it maintained almost $2 million in net assets and equity at the relevant time, and it could "meet its

reasonably expected debts." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677-78 (9th Cir. 2017)(emphasis added), holding no injustice would result when the defendant "has always been able to satisfy judgments against it, and the corporation maintained [substantial] net assets and equity . . . ." Id., at 677-78. In comparison, EighteenTek and Alvantor have more than $5 million in assets and equity, significantly more than the defendant in *Perfect 10, Inc*., where the Court declined to pierce the corporate veil. SF 29.

In essence, UTW claims that the Corporate Defendants do not have sufficient assets to pay what it owes if it were to lose at trial. This is not enough to establish an inequitable result sufficient to disregard the corporate form. Even if UTW offered evidence showing that the corporate entities could not satisfy potential "multimillion dollar judgments" resulting from its trademark and patent infringement claims—which it did not—UTW would still fail to prove inadequate capitalization because the Corporate Defendants' "capital [is] sufficient . . . to operate its normal business." *In re Hydroxycut Mktg.*, 810 F. Supp. 2d at 1122-23 (citations omitted)).

Further, evidence of *past* fraudulent conduct to avoid financial liability or injustice is necessary to support a finding of alter ego liability. *Gerritsen*, 116 F. Supp. 3d at 1145 (rejecting the plaintiff's argument that failure to pierce the corporate veil would permit defendants to leave the plaintiff "without a remedy" and "sanction a fraud" did not satisfy the second prong because these allegations did not support a plausible inference that an entity actually engaged in bad faith conduct *to avoid liability*.) But UTW has not identified exactly what liability the Individual Defendants were allegedly trying to avoid when they formed Alvantor

and EighteenTek. Tax records for the Individual and Corporate Defendants show no liability or outstanding debts.

Lacking any evidence that the Individual Defendants formed Alvantor and EighteenTek to avoid liability, UTW's entire argument for inequitable result apparently rests on the unsupported allegation that the Corporate Defendants *might* try to evade a judgment, should UTW win on the merits. **But again, UTW has not identified a single instance where the Corporate Defendants failed to pay their bills**, or cited to any authority to suggest that a corporation may be considered "undercapitalized" absent a showing that it lacks sufficient capital to satisfy the debt in question.

The Individual Defendants run a successful family tent business. They are simply not the "kind of unsophisticated individual owner-operators upon whom the courts have imposed the "extreme remedy, sparingly used," of alter ego liability. *Sonora*, 99 Cal. Rptr. 2d at 836. Given the evidence on the record, the only result of failing to pierce the corporate veil would be that, if UTW prevails, it would have to seek to satisfy its judgment from the assets of the Corporate Defendants. "It is always preferable to have numerous sources from which to collect a judgment, however, being forced to collect damages from a main competitor is hardly an inequitable result. It is, rather, a normal incident of doing business." *Cambridge Elecs. Corp.*, 227 F.R.D. at 330.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Court enter summary judgment in favor of the Individual Defendants, and dismiss UTW's alter ego liability claims with prejudice.

Date: June 30, 2025

Respectfully submitted,

By:/s/ Xiyan Zhang________

Xiyan Zhang (*Pro Hac Vice*)
Pete S. Wolfgram (*Pro Hac Vice*)
STRATUM LAW LLC
2424 E. York St. Ste. 223
Philadelphia, PA
Xzhang@stratumlaw.com
pwolfgram@stratumlaw.com
Attorneys for Defendants Jianyong Wen, Lun Xu, Xuduo Wen, Alvantor Industry Company Ltd., and EighteenTek, Inc.

## CERTIFICATE OF COMPLIANCE

"The undersigned, counsel of record for the Moving Defendants, certifies that this brief contains 6127 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 30, 2025

Respectfully submitted,

By:/s/ Xiyan Zhang
Xiyan Zhang (Pro Hac Vice)
Pete S. Wolfgram (Pro Hac Vice)
STRATUM LAW LLC
2424 E. York St. Ste. 223
Philadelphia, PA
Xzhang@stratumlaw.com
pwolfgram@stratumlaw.com
Attorneys for Defendants Jianyong Wen, Lun Xu, Xuduo Wen, Alvantor Industry Company Ltd., and EighteenTek, Inc.

## CERTIFICATE OF SERVICE

***Under The Weather, LLC, an Ohio limited liability company vs. Alvantor Industry Company, LTD., et. al.***

**USDC Case No. 2:23-cv-08343-MRA-E**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years age and not a party to the action. My business address is 2424 E. York St. Ste. 300, Philadelphia, PA, 19125. I have been admitted *pro hac vice* to practice in this Court at whose direction the service was made.

On June 30, 2025, I served the following document(s):

- **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;**
- **MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT;**
- **DECLARATIONS OF XUDUO WEN, JIANYONG WEN, AND LUN XU ISO MOTION FOR SUMMARY JUDGMENT**
- **PROPPOSED STATEMENT OF UNDISPUTED FACTS;**
- **PROPOSED JUDGMENT**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

***See Notice of Electronic Service on Court's CM/ECF website***

The documents were served by the following means:

☐ (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

☒ (BY COURT'S CM/ECF SYSTEM) pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the State of CALIFORNIA that the foregoing is true and correct.

Executed on June 30, 2025, at Philadelphia, Pennsylvania.

/s/Xiyan Zhang