Michael K. Friedland (SBN 157,217)
michael.friedland@fciplaw.com
Joseph S. Cianfrani (SBN 196,186)
joseph.cianfrani@fciplaw.com
Nicole R. Townes (SBN 272,342)
nicole.townes@fciplaw.com
David G. Kim (SBN 307,821)
david.kim@fciplaw.com
FRIEDLAND CIANFRANI LLP
17901 Von Karman St., Ste. 925
Irvine, CA 92614
(949) 734-4900

Attorneys for Plaintiff and Counterclaim-Defendant
UNDER THE WEATHER, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNDER THE WEATHER, LLC, an Ohio limited liability company;<br><br>Plaintiff,<br><br>v.<br><br>ALVANTOR INDUSTRY COMPANY, LTD., a California corporation, and EIGHTEENTEK, INC., a California corporation; JIANYONG WEN, an individual; LUN XU, an individual; and XUDUO WEN, an individual;<br><br>Defendants. | Case No. 2:23-cv-08343-MRA-E<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>BEFORE: HON. MÓNICA RAMÍREZ ALMADANI<br>DISCOVERY CUTOFF: JULY 18, 2025<br>PRETRIAL CONFERENCE DATE: OCTOBER 6, 2025<br>TRIAL DATE: OCTOBER 20, 2025<br><br>**REDACTED VERSION** |
| ALVANTOR INDUSTRY COMPANY, LTD., a California corporation, EIGHTEENTEK, INC., a California corporation; JIANYONG WEN, an individual; LUN XU, an individual; and XUDUO WEN, an individual;<br><br>Counterclaimants,<br><br>v.<br><br>UNDER THE WEATHER, LLC, an Ohio limited liability company; | |

Counterclaim-Defendant.

UNDER THE WEATHER, LLC, an Ohio limited liability company;

Counterclaimant,

v.

ALVANTOR INDUSTRY COMPANY, LTD., a California corporation, EIGHTEENTEK, INC., a California corporation; JIANYONG WEN, an individual; LUN XU, an individual; and XUDUO WEN, an individual;

Counterclaim-Defendants.

# TABLE OF AUTHORITIES

CASES

*Anderson v. Abbott,* 321 U.S. 349 (1944) ....................11

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)....................8

*Assoc. Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal.App. 2d 825, 831-41 (1962)....................9

*Burnett v. Frayne*, No. C 09-04693 SBA (PR), 2011 WL 5830339, at *1 (N.D. Cal. Nov. 18, 2001)....................22

*Cal West Environmental Servs., Inc. v. eStrategy, Inc.*, No. 15-9667, 2017 WL 11631492 at *3 (C.D. Cal. Jan. 3, 2017)....................1

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ....................8

*Comprehensive Toxicology Billing, LLC v. Nord*, No. CV 14-07806-VAP (Ex), 2017 WL 11639338, at *19 (C.D. Cal. Jan. 10, 2017) ....................18

*Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003) ....................10

*Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987)....................22

*Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC,* No. 820-CV-02114-SSS-ADSX, 2023 WL 3040584, at *9 (C.D. Cal. Mar. 20, 2023), *aff'd*, No. 23-55060, 2024 WL 385655 (9th Cir. Feb. 1, 2024)....................1

*Genesis Merch. Partners, LP v. Nery's USA, Inc*., No. 3:11-cv-1589-JM-WVG, 2012 WL 12868257, at *3 (C.D. Cal. Dec. 19, 2012) ....................10

*Gerritsen v. Warner Bros. Entm't. Inc*., 116 F. Supp. 3d 1104, 1143 (C.D. Cal. 2015)....................19

*Headlands Reserve, LLC v. Center for Natural Lands Mgmt.*, 523 F.Supp.2d 1113, 1122-23 (C.D. Cal. 2007)....................8

*Holley v. Crank*, 386 F.3d 1248, 1256-57 (9th Cir. 2004) ....................14

*James Stewart Ent., LLC v. L&M Racing, LLC*, No. ED-CV-1249-JGB-SPX, 2013 WL 12248146, at *8 (C.D. Cal. June 28, 2013) ....................20

*Kohn v. Kohn*, 95 Cal. App. 2d 708 (1950)..........17

*LaRocca v. LMR Partners*, No. B271298, 2018 WL 1027514, at *9 (Cal. Ct. App. 2018)..........13

*Margolis v. Ryan*, 140 F. 3d 850, 853 (9th Cir. 1998)..........22

*Mid-Century Ins. Co. v. Garnder,* 9 Cal.App. 4th 1205, 1212 & n.3 (1992)..........9

*Ming-Hsaing Kao v. Holiday*, 58 Cal. App. 5th 199, 206-207 (2020)..........12

*Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1073-74 (Cal. Ct. App. 2011)..........10

*Navarro v. Data,* No. 2:20-cv-07370-SVW-SK, 2022 WL 18280359, at *4 (C.D. Cal. Dec. 7, 2022)..........11

*Neilson v. Union Bank of California,* 290 F. Supp. 2d 1101 (C.D. Cal. 2003)..........11

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677-78 (9th Cir. 2017)..........19

*Politte v. U.S.*, No. 07-cv-1950, 2012 WL 965996, at *9 (S.D. Cal. Mar. 21, 2012)..........9

*Safety PPE, LLC v. Skanda Group of Industries LLC*, No. CV 21-3967-JFW(PDx), 2023 WL 2558549, at *10 (C.D. Cal. Feb. 13, 2023)..........17

*Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1003 (N.D. Cal. 2001)..........15

*Truebridge v. Thaler*, No. A143287, 2017 WL 1179398, at *2 (Cal. Ct. App. Mar. 30, 2017)..........15

*Wady v. Provident Life and Accident Ins. Co. of Am,* F. Supp. 2d 1060, 1068 (C.D. Cal. 2002)..........11

*Wallach v. Soroudi,* No. CV 06-04133 DDP (SHx), 2008 WL 11336829, at *4 (C.D. Cal. Oct. 21, 2008)..........19

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 3

III. LEGAL STANDARD ........ 7

IV. THERE IS SUFFICIENT EVIDENCE TO ESTABLISH ALTER EGO LIABILITY ........ 10

A. THE DEFENDANTS HAVE COMMINGLED PERSONAL AND CORPORATE FUNDS AND ASSETS AND DIVERTED CORPORATE FUNDS TO PERSONAL PURPOSES ........ 10

B. ALL OF ALVANTOR’S AND EIGHTEENTEK’S STOCK IS OWNED BY MEMBERS OF THE SAME IMMEDIATE FAMILY ........ 13

C. THE INDIVIDUAL DEFENDANTS HAVE HELD THEMSELVES OUT AS RESPONSIBLE FOR THE CORPORATE DEFENDANTS’ LEASE OBLIGATIONS ........ 13

D. ALVANTOR AND EIGHTEENTEK HAVE NOT OBSERVED CORPORATE FORMALITIES ........ 14

E. THE INDIVIDUAL DEFENDANTS HAVE COMPLETE CONTROL OVER THE BUSINESS ACTIVITIES OF ALVANTOR AND EIGHTEENTEK ........ 15

F. THE FAILURE TO APPLY ALTER EGO LIABILITY WOULD BE INEQUITABLE AND PROMOTE INJUSTICE ........ 15

G. DEFENDANTS HAVE WITHHELD INFORMATION ON THE CAPITALIZATION OF ALVANTOR AND EIGHTEENTEK, AND THE INFORMATION IN THEIR MOTION IS INADMISSIBLE HEARSAY ........ 18

V. PLAINTIFF HAS SHOWN THAT THERE ARE, AT A MINIMUM, GENUINE DISPUTES OF MATERIAL FACT, BUT EVEN IF IT HAS

NOT, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE FACTS AND CURRENT STATUS OF THE CASE WARRANT FURTHER DISCOVERY ........................................ 19

VI. CONCLUSION ........................................................................................ 23

# TABLE OF AUTHORITIES

CASES

*Anderson v. Abbott,* 321 U.S. 349 (1944) .......... 11

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) .......... 8

*Assoc. Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal.App. 2d 825, 831-41 (1962) .......... 9

*Burnett v. Frayne*, No. C 09-04693 SBA (PR), 2011 WL 5830339, at *1 (N.D. Cal. Nov. 18, 2001) .......... 22

*Cal West Environmental Servs., Inc. v. eStrategy, Inc.*, No. 15-9667, 2017 WL 11631492 at *3 (C.D. Cal. Jan. 3, 2017) .......... 1

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) .......... 8

*Comprehensive Toxicology Billing, LLC v. Nord*, No. CV 14-07806-VAP (Ex), 2017 WL 11639338, at *19 (C.D. Cal. Jan. 10, 2017) .......... 18

*Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003) .......... 10

*Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987) .......... 22

*Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC,* No. 820-CV-02114-SSS-ADSX, 2023 WL 3040584, at *9 (C.D. Cal. Mar. 20, 2023), *aff'd*, No. 23-55060, 2024 WL 385655 (9th Cir. Feb. 1, 2024) .......... 1

*Genesis Merch. Partners, LP v. Nery's USA, Inc*., No. 3:11-cv-1589-JM-WVG, 2012 WL 12868257, at *3 (C.D. Cal. Dec. 19, 2012) .......... 10

*Gerritsen v. Warner Bros. Entm't. Inc*., 116 F. Supp. 3d 1104, 1143 (C.D. Cal. 2015) .......... 19

*Headlands Reserve, LLC v. Center for Natural Lands Mgmt.*, 523 F.Supp.2d 1113, 1122-23 (C.D. Cal. 2007) .......... 8

*Holley v. Crank*, 386 F.3d 1248, 1256-57 (9th Cir. 2004) .......... 14

*James Stewart Ent., LLC v. L&M Racing, LLC*, No. ED-CV-1249-JGB-SPX, 2013 WL 12248146, at *8 (C.D. Cal. June 28, 2013) .......... 20

*Kohn v. Kohn*, 95 Cal. App. 2d 708 (1950) .......... 17

*LaRocca v. LMR Partners*, No. B271298, 2018 WL 1027514, at *9 (Cal. Ct. App. 2018) .......... 13

*Margolis v. Ryan*, 140 F. 3d 850, 853 (9th Cir. 1998) .......... 22

*Mid-Century Ins. Co. v. Garnder,* 9 Cal.App. 4th 1205, 1212 & n.3 (1992) .......... 9

*Ming-Hsaing Kao v. Holiday*, 58 Cal. App. 5th 199, 206-207 (2020) .......... 12

*Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1073-74 (Cal. Ct. App. 2011) .......... 10

*Navarro v. Data,* No. 2:20-cv-07370-SVW-SK, 2022 WL 18280359, at *4 (C.D. Cal. Dec. 7, 2022) .......... 11

*Neilson v. Union Bank of California,* 290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......... 11

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677-78 (9th Cir. 2017) .......... 19

*Politte v. U.S.*, No. 07-cv-1950, 2012 WL 965996, at *9 (S.D. Cal. Mar. 21, 2012) .......... 9

*Safety PPE, LLC v. Skanda Group of Industries LLC*, No. CV 21-3967-JFW(PDx), 2023 WL 2558549, at *10 (C.D. Cal. Feb. 13, 2023) .......... 17

*Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1003 (N.D. Cal. 2001) .......... 15

*Truebridge v. Thaler*, No. A143287, 2017 WL 1179398, at *2 (Cal. Ct. App. Mar. 30, 2017) .......... 15

*Wady v. Provident Life and Accident Ins. Co. of Am,* F. Supp. 2d 1060, 1068 (C.D. Cal. 2002) .......... 11

*Wallach v. Soroudi,* No. CV 06-04133 DDP (SHx), 2008 WL 11336829, at *4 (C.D. Cal. Oct. 21, 2008) .......... 19

<u>STATUTES</u>

Fed. R. Civ. P. 56(c) .......... 7

Fed. R. Civ. P. 26(a)(1)(A)(ii) .......... 18

Fed. R. Civ. P. 56(d) .......... 3

## I. INTRODUCTION

"Alter ego liability is quintessentially a question of fact and therefore 'inappropriate for summary judgment if [the moving party has] put forth evidence that a trier of fact might reasonably consider in making an alter-ego determination.'" *Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC,* No. 820-CV-02114-SSS-ADSX, 2023 WL 3040584, at *9 (C.D. Cal. Mar. 20, 2023), *aff'd*, No. 23-55060, 2024 WL 385655 (9th Cir. Feb. 1, 2024) (*quoting Cal West Environmental Servs., Inc. v. eStrategy, Inc*., No. 15-9667, 2017 WL 11631492 at *3 (C.D. Cal. Jan. 3, 2017)).

Here, there is more than sufficient evidence to establish that Alvantor Industry Company, Ltd. ("Alvantor") and EighteenTek, Inc. ("EighteenTek") (collectively, "Corporate Defendants") are the alter egos of Lun Xu, Jianyong Wen, and Xuduo Wen (collectively, "Individual Defendants")—and far more than enough to show that there is a genuine issue of material fact.[1] Among other things,

- The Individual Defendants have commingled personal and corporate assets, including a [redacted] a [redacted] and an unspecified additional [redacted] car, as well as intellectual property assets such as patents and trademarks.
- The Individual Defendants have diverted corporate funds for purposes other than corporate purposes, including the use of corporate funds to purchase the super-luxury cars.
- All of the stock of Alvantor and EighteenTek is [redacted]
- The Individual Defendants have represented that they are personally liable for the debts of the Corporate Defendants, at least by personally

[1] Defendants do not appear to dispute that Alvantor and EighteenTek are alter egos of each other. Mot. at 15.

guaranteeing commercial lease agreements and, in at least one instance, signing as a co-tenant on a lease.

- The Corporate Defendants were undercapitalized, as demonstrated by the absence of evidence of initial capitalization of either Corporate Defendant and the evidence of nominal bank account balances for both.
- The Individual Defendants utterly dominated and controlled the Corporate Defendants.
- The ownership and management of the Corporate Defendants was concealed and misrepresented, at least in corporate filings and federal tax returns.
- The Corporate Defendants have failed to observe any corporate formalities. There is no evidence of any board meetings, corporate minutes, or resolutions.

The evidence is thus overwhelming that the Corporate Defendants are the alter egos of the Individual Defendants.

Contrary to Defendants' assertions, Plaintiff is not required to prove that Alvantor and EighteenTek were formed for the purpose of defrauding Plaintiff to establish alter ego liability. At least the first four pages of the Defendants' Motion contain information and facts that are wholly irrelevant to whether alter ego liability should be applied. Similarly, the alleged popularity of the Defendants' products or the number of intellectual property rights they own have no bearing on whether the Corporate Defendants are the alter egos of the Individual Defendants.

Because Plaintiff has more than sufficient evidence to establish that there is at least a genuine issue of material fact as to alter ego liability, this Court should deny Defendants' Motion.

If there were any question, however, Plaintiff would request that this Court allow Plaintiff additional time to conduct discovery. Defendants initially refused to produce responsive documents, and Plaintiff was forced to file a motion to compel.

Although, the Magistrate Judge granted that motion, Defendants were not ordered to produce documents until July 18th, four days after Plaintiff's deadline to oppose this Motion. Thus, if this Court does not deny Defendants' Motion outright, Plaintiff requests additional time to conduct discovery pursuant to Fed. R. Civ. P. 56(d) as set forth below.

## II. FACTUAL BACKGROUND

Jianyong Wen and Lun Xu are husband and wife, and Xuduo Wen is their son. J. Wen (Dkt. No. 146-2) Decl. ¶ 3. Jianyong Wen, Lun Xu, and Xuduo Wen are the only officers and directors of the Corporate Defendants, Alvantor and EighteenTek. *Id*. Exs. 1, 6. Thus, all of the officers and directors of the Corporate Defendants are all members of the same immediate family.

The Corporate Defendants' filings with the California Secretary of State identify Lun Xu as the Chief Executive Officer, Secretary, and sole director of Alvantor, as well as the assistant secretary of EighteenTek. J. Wen Decl. Exs. 1, 6. Xuduo Wen is identified as the Chief Executive Officer, Chief Financial Officer, Secretary, and sole director of EighteenTek in its corporate filings. *Id.* Ex. 6. Jianyong Wen is the Chief Financial Officer of Alvantor. *Id*. Ex. 1.

Although the corporate filings state that Xuduo Wen is the CEO, CFO, Secretary, and sole director for EighteenTek, Xuduo Wen has testified that he has no knowledge of what products are sold by EighteenTek or even who owns EighteenTek. Declaration of Nicole R. Townes ISO Opposition to Motion for Summary Judgment ("Townes Decl.") Ex. 1 at 19:24-20:11. He testified that he does not know what ***his*** responsibilities or duties are as the CEO, CFO, and Secretary of EighteenTek. *Id*. Ex. 1 at 44:14-45:20. Xuduo Wen further testified that he performs ***no*** duties for EighteenTek. *Id.* Ex. 1 at 52:9-11. Lun Xu contradicted this testimony; remarkably, she testified that Jianyong Wen actually performs the duties of Chief Executive Officer of EighteenTek. *Id*. Ex. 2 at 24:9-12.

In his declaration, Xuduo Wen admits that he "did not have significant involvement" in EighteenTek between 2020-2024. X. Wen Decl. (Dkt. No. 146-4) ¶ 7. However, in direct contradiction to Xuduo Wen's declaration and his and Lun Xu's deposition testimony that Xuduo Wen has no involvement in the business, EighteenTek's 2020-2023 federal tax returns state that [redacted] Townes Decl. Ex. 4.

Xuduo Wen asserts in his declaration that he has "never concealed or misrepresented the identity of the responsible ownership, management, and financial interest in Alvantor or EighteenTek." X. Wen Decl. ¶ 14. Xuduo Wen's assertion is simply false. The contradictory statements in corporate filings, tax returns, deposition testimony, and declarations prove that he has indeed concealed and misrepresented the identity of the responsible manager of EighteenTek.

Further, Lun Xu and Jianyong Wen have testified that they have complete control over the operations of Alvantor and EighteenTek. When asked about his duties, Jianyong Wen stated [redacted] Townes Decl. Ex. 3 at 59:3-15. As for salaries, including his own, Jianyong Wen stated that [redacted] *Id.* Ex. 3 at 212:10-18, 213:14-16. Jianyong Wen also unilaterally makes decisions about [redacted]. *Id.* Ex. 3 at 214:9-215:6. [redacted]

Lun Xu and Jianyong Wen are [redacted]. *Id.* Ex. 3 at 257:24-258:8. Lun Xu has testified that she and Jianyong Wen are the only decision makers for Alvantor. *Id.* Ex. 2 at 31:4-12.

As of 2023, all of Alvantor's and EighteenTek's stock [redacted].[2] Alvantor's 2023 federal tax return states that Lun Xu [redacted]. *Id*. Ex. 5 at 10639. Between 2012-2015, Jianyong Wen or Lun Xu [redacted]. *Id*. Ex. 5 at ALV009489, ALV009525, ALV009567, ALV009603. Between 2016-2022, all of Alvantor's stock was [redacted]. *Id*. Ex. 5 at ALV009638, ALV009678, ALV009720, ALV009760, ALV009826, ALV010059, ALV010372, ALV010639. Not surprisingly, [redacted]. *Id*. Ex. 3 at 35:8-15, 47:16-19. When asked who owned Ningbo Leedor, Jianyong Wen [redacted]. *Id*. Ex. 3 at 41:18-25. No evidence has been disclosed that would explain how ownership of the stock was transferred [redacted].

Since the inception of EighteenTek, at least according to its tax returns and Lun Xu's testimony, [redacted]. *Id*. Ex. 2 at 27:18-19; Ex. 4. Yet, during his deposition, Xuduo Wen testified that he did not know who owned EighteenTek. *Id*. Ex. 1 at 19:24-20:11.

Jianyong Wen, Lun Xu, and Xuduo Wen have failed to observe any corporate formalities for Alvantor or EighteenTek. Alvantor and EighteenTek do not have any shareholder or board meetings, and they have not kept meeting minutes, board resolutions, or any other ordinary corporate records. *Id*. Ex. 2 at 26:23-25, 27:1-2, 27:11-13, 31:17-25, 32:2-3. Plaintiff requested that Defendants produce all shareholder agreements, director agreements, employment agreements, minutes for board of director meetings, minutes from shareholder meetings, and minutes from

[2] Defendants have not produced any documents identifying stock ownership for Alvantor and EighteenTek besides their federal tax returns, despite being served with requests for production seeking these documents. Townes Decl. ¶ 24.

committee meetings. Townes Decl. ¶ 21. Defendants have not produced any of these documents, presumably because they do not exist.

Alvantor and EighteenTek do not have board meetings. Townes Decl. Ex. 2 at 26:23-25, 31:17-20. Lun Xu's declaration claims that Alvantor and EighteenTek currently have seven employees. Xu Decl. (Dkt. No. 146-3) ¶ 10. Jianyong Wen's declaration, in contrast, claims that Alvantor and EighteenTek have ***eleven*** employees. J. Wen Decl. ¶ 14. Consistent with their failure to observe corporate formalities, both declarations recite the number of employees of both entities together. Neither declaration indicates that Alvantor and EighteenTek have their own employees separate from the other.

Lun Xu claims in her declaration that she has never "held [herself] out as being responsible for Alvantor's and EighteenTek's debts or liabilities." Lun Xu Decl. ¶ 22. This testimony is blatantly contradicted by several of Alvantor's and EighteenTek's commercial leases—including the leases that Defendants attached as exhibits to Defendants' Motion which show that Lun Xu expressly guaranteed the leases. J. Wen Decl. Ex. 8; Townes Decl. Ex. 6 at ALV011969, ALV011995, ALV012001, ALV012019-20, ALV012047-48. In fact, in at least one of the commercial lease agreements for Alvantor, Lun Xu is actually identified as a co-tenant on the lease. The tenant is identified as "Alvantor Industry Co. Ltd./Lun Xu." Townes Decl. Ex. 6 at ALV011995.

Xuduo Wen similarly claim that he has "never held [himself] out as being responsible for Alvantor or EighteenTek's debts or liabilities." X. Wen Decl. ¶ 9. His claim is also false. He is also listed as the personal guarantor, along with Lun Xu, on EighteenTek's commercial leases. Townes Decl. Ex. 6 at ALV012019, ALV012047-48.

Further, the evidence shows that the Individual Defendants purchased vehicles using corporate funds. On Alvantor's 2023 federal tax return, [redacted]

[redacted]. Townes Decl. Ex. 5 at ALV010643. [redacted]. *Id.* [redacted] *Id.* On EighteenTek's 2022 and 2023 federal tax returns, another vehicle (the make and model is not disclosed) is claimed as property. *Id.* Ex. 4 ALV011001, ALV011070. [redacted]. *Id.* It is inconceivable that corporations whose entire business consists of importing tents from China and selling them online could use a [redacted], let alone two additional luxury cars, for any legitimate business purpose.

Much of the intellectual property rights used by Alvantor and EighteenTek are owned by Lun Xu, Jianyong Wen, and Xuduo Wen, and these intellectual property rights have been licensed or assigned between the Individual Defendants and the Corporate Defendants in transactions that are not at arms-length. Lun Xu owns the U.S. trademark registrations for several marks used in Alvantor's business including the ALVANTOR and ALVANTOR TECH marks. Townes Decl. Exs. 7, 8. Lun Xu has licensed her trademarks to Alvantor [redacted]. *Id.* Ex. 9. Xuduo Wen owns the U.S. trademark registration for EIGHTEENTEK. *Id.* Ex. 10. Lun Xu, Jianyong Wen, and Xuduo Wen also [redacted]. *Id.* Ex. 3 at 65:19-21. Some of these patents have been licensed to EighteenTek [redacted] but there is no evidence of how the value of this patent license was determined. *Id.* Ex. 11. The intellectual property assets are commingled between the Individual Defendants and Corporate Defendants, and are assigned or licensed, without any apparent rhyme or reason.

## III. LEGAL STANDARD

A party may obtain summary judgment only if it can establish through admissible evidence that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986). "A factual issue is 'genuine' when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor, and an issue is 'material' when its resolution might affect the outcome of the suit under the governing law." *Headlands Reserve, LLC v. Center for Natural Lands Mgmt.*, 523 F.Supp.2d 1113, 1122-23 (C.D. Cal. 2007).

In ruling on the motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions." *Id.*

A party seeking summary judgment on alter ego bears a particularly heavy burden. "Alter ego liability is quintessentially a question of fact and therefore 'inappropriate for summary judgment if [the moving party has] put forth evidence that a trier of fact might reasonably consider in making an alter-ego determination.'" *Genesis 1 Oil Servs.,* 2023 WL 3040584, at *9, *aff'd*, 2024 WL 385655 (9th Cir. Feb. 1, 2024) (*quoting Cal West Environmental Servs.,* 2017 WL 11631492 at *3).

California law recognizes alter ego liability when there is such a unity of interest and ownership that the individuality, or separateness, of the person and the corporation have ceased to exist. *Politte v. U.S.*, No. 07-cv-1950, 2012 WL 965996, at *9 (S.D. Cal. Mar. 21, 2012). Further, the adherence to the fiction of the separate existence of the corporation and individual must create an inequitable result. *Id.* However, it is not necessary that the party asserting the alter ego theory under California law prove actual fraud. *Id*. *11.

California courts have identified a number of factors which can be used in determining whether the alter ego doctrine under California law applies. These factors include, but are not limited to: (1) the commingling of funds and other assets; (2) the unauthorized diversion of corporate funds to other than corporate purposes; (3) the sole ownership of all stock in a corporation by one individual or members of

a family; (4) the representation by an individual that he is personally liable for corporate debts; (5) the undercapitalization of the corporation; (6) the domination or control of the corporation by the stockholders; (7) the use of the corporation as a mere conduit for an individual's business; (8) the concealment of the ownership of the corporation; and (9) the disregard of formalities and the failure to maintain arms-length transactions with the corporation. *See Politte*, 2012 WL 965996, at *10; *Assoc. Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal.App. 2d 825, 831-41 (1962); *Mid-Century Ins. Co. v. Garnder,* 9 Cal.App. 4th 1205, 1212 & n.3 (1992).

"Unity of interests is found based upon the totality of the circumstances. Where an individual is alleged to be the alter ego of a corporate defendant, evidence to suggest that the corporation is generally under-capitalized, that the individual's and corporation's funds are comingled, and that the individual shown a 'disregard for corporate formalities' is all particularly probative." *Genesis 1 Oil Servs., LLC*, 2023 WL 3040584, at *8 (*quoting Genesis Merch. Partners, LP v. Nery's USA, Inc.*, No. 3:11-cv-1589-JM-WVG, 2012 WL 12868257, at *3 (C.D. Cal. Dec. 19, 2012)).

A finding of alter ego liability is appropriate where the failure to recognize the unity "would produce inequitable results" and "promote an injustice." *See Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1073-74 (Cal. Ct. App. 2011) (holding that actual fraud is not required to apply the alter ego doctrine, but rather, "[w]hen the failure to recognize the unity of a corporation and an individual defendant would produce inequitable results," that is "sufficient to apply the alter ego doctrine"). If it would be inequitable to allow the Individual Defendants to use the corporate funds for their personal benefit and not to satisfy Plaintiff's claims, then inequitable results and promotion of injustice are shown. *Id*. The "injustice and inequity" of that possible result is "enough to meet the test" to apply the alter ego doctrine in this case. *Id.*

The cases cited by Defendants regarding the standard for alter ego liability do not support this Motion. In *Dole Food Co. v. Patrickson*, a party argued that the

doctrine of piercing the corporate veil should be applied "as a categorical matter, [that] all subsidiaries are deemed to be the same as the parent corporation." 538 U.S. 468, 475 (2003). Similarly, in *Neilson v. Union Bank of California*, the court assessed whether a parent bank was the corporate alter ego of its subsidiary bank. 290 F. Supp. 2d 1101 (C.D. Cal. 2003). In *Wady v. Provident Life and Accident Ins. Co. of Am.,* the court analyzed whether a parent corporation was an alter ego of its subsidiary, where the only evidence was documents that used pronouns such as "we," "us," and "our." 216 F. Supp. 2d 1060, 1068 (C.D. Cal. 2002). These cases have no relevance here since this does not involve applying the doctrine to parent and subsidiary corporations.

In *Anderson v. Abbott*, the Court considered the issue of whether shareholders of a bank-stock holding company are liable under the Federal Reserve Act of the National Bank Act. 321 U.S. 349 (1944). This case is clearly inapplicable here.

In *Navarro v. Data*, the plaintiffs "abandoned their alter ego and secondary liability theories because plaintiffs do not mention these theories in their opposition papers…." No. 2:20-cv-07370-SVW-SK, 2022 WL 18280359, at *4 (C.D. Cal. Dec. 7, 2022). Not only has Plaintiff mentioned the alter ego theory in its papers, Plaintiff has more than sufficient evidence to show that alter ego liability applies. Further, unlike in *Fair Housing Council of Riverside County*, cited by Defendants, the evidence shows that the Individual Defendants have used corporate funds for personal luxury vehicles and have held themselves out as liable for the debts and liabilities of the Corporate Defendants. No. EDCV 21-941 JGB(KKx), 2023 U.S. Dist. LEXIS 74532 (C.D. Cal. Apr. 27, 2023).

## IV. There is Sufficient Evidence to Establish Alter Ego Liability

### a. The Defendants Have Commingled Personal and Corporate Funds and Assets and Diverted Corporate Funds to Personal Purposes

Lun Xu, Jianyong Wen, and Xuduo Wen used corporate funds to purchase

personal vehicles. On the 2023 federal tax return for Alvantor, [redacted] Townes Decl. Ex. 5 at ALV010643. Similarly, on the 2022 and 2023 federal tax returns for EighteenTek, [redacted] *Id.* Ex. 4 at ALV011001, ALV011070.

It is more than implausible that [redacted] could be used for Alvantor's business purposes of importing tents from China and selling them online. Similarly, it seems implausible that [redacted] is needed for EighteenTek's identical business. These are likely the luxury personal vehicles of the three individual defendants, and the evidence shows that the Individual Defendants used Alvantor's and EighteenTek's corporate funds to purchase them.[3] The use of corporate funds to purchase luxury personal vehicles strongly supports that Alvantor and EighteenTek are merely the alter egos of the Individual Defendants. *Politte,* 2012 WL 965996, at *9 (finding persuasive that the company had purchased vehicles for the family's personal use in determining that the company was the alter ego of the family); *Ming-Hsaing Kao v. Holiday*, 58 Cal. App. 5th 199, 206-207 (2020) (finding persuasive that corporate funds were used to pay personal rent in determining that the company was the alter ego of an individual).

Further, the intellectual property rights used by Alvantor and EighteenTek are commingled between the Individual Defendants and the Corporate Defendants without any rhyme or reason. Much of the intellectual property rights used by Alvantor and EighteenTek in their businesses were owned, or are still owned, by the Individual Defendants. For example, Defendants argue that the federally registered ALVANTOR and EIGHTEENTEK trademarks clearly label the Corporate Defendants' products. However, the federal registration for the

[3] As discussed in more detail below, Plaintiff has not yet had the opportunity to depose the Defendants regarding these tax returns.

ALVANTOR mark is owned by Lun Xu, and the federal registration for EIGHTEENTEK is owned by Xuduo Wen. Townes Decl. Exs. 7, 8, 10.

Some of the intellectual property rights have been licensed to the Corporate Defendants and some of the rights have been assigned. For example, Xuduo Wen licensed three patents to EighteenTek for a [redacted] Townes Decl. Ex. 11. Lun Xu signed this license agreement on behalf of EighteenTek. *Id.* However, there is no information or documents to support how it was determined that the licensing of these three patents was worth a [redacted].[4] Xuduo Wen testified that he had never even seen a patent. *Id*. Ex. 1 at 77:23-24.

Further, in 2012, Lun Xu licensed trademark rights to Alvantor [redacted]. Townes Decl. Ex. 9. The EIGHTEENTEK trademark is still owned by Xuduo Wen, and there is no trademark license between Xuduo Wen and EighteenTek. *Id*. Ex. 10. On March 20, 2024, after the initiation of this lawsuit, Lun Xu assigned to Alvantor the PRIVATEPOD trademark [redacted] *Id*. Ex. 12. The ownership, transfers, and licenses of the intellectual property assets were not arm's length transactions and support that the Individual Defendants' assets and the Corporate Defendants' assets are commingled. *LaRocca v. LMR Partners*, No. B271298, 2018 WL 1027514, at *9 (Cal. Ct. App. 2018) (finding that the assignment of an individual's trademark to the company for no consideration supported that the company was the alter ego of the individual).

Defendants' assertion that there is "no credible evidence they ever commingled personal funds with those of the Corporate Defendants and vice versa" is clearly disputed. The evidence shows that the Individual Defendants purchased luxury vehicles with the Corporate Defendants' funds and commingled intellectual

---

[4] As discussed in more detail below, this document was produced on June 25, 2025, and Plaintiff has not had the opportunity to depose Defendants regarding this patent license.

property assets. Mot. at 13. Accordingly, this factor weighs in favor of finding alter ego liability.

**b. All of Alvantor's and EighteenTek's Stock is Owned by Members of the Same Immediate Family**

As of 2023, when this lawsuit was filed, all of Alvantor's and EighteenTek's stock was owned by members of the same immediate family. [redacted]. Townes Decl. Ex. 5 at ALV010639. Since the inception of EighteenTek, [redacted]. *Id*. Ex. 2 at 27:18-19, Ex. 4 at ALV010895, ALV010950, ALV010999, ALV011068. At various times prior to 2023, the Chinese entity [redacted] *Id.* Ex. 3 at 35:8-15, 47:16-19. When asked who owned Ningbo Leedor, [redacted]. *Id*. Ex. 3 at 41:18-25.

*Holley v. Crank*, cited by Defendants, is relevant here. In *Holley*, the company was found to be the alter ego of the individual, in part, because the individual was the sole shareholder. *Holley v. Crank*, 386 F.3d 1248, 1256-57 (9th Cir. 2004). Accordingly, this factor also weighs in favor of alter ego liability.

**c. The Individual Defendants Have Held Themselves Out as Responsible for the Corporate Defendants' Lease Obligations**

In their declarations, the Individual Defendants represented to this Court that they have never been responsible for Alvantor's and EighteenTek's debts or liabilities. X. Wen Decl. ¶ 9; Lun Xu ¶ 22; J. Wen ¶ 25. These statements are false. Both Lun Xu and Xuduo Wen have acted as guarantors on the Corporate Defendants' commercial leases. Lun Xu is the personal guarantor for Alvantor's and EighteenTek's commercial leases. J. Wen Decl. Ex. 8; Townes Decl. Ex. 8 at ALV011969, ALV012001, ALV012019-20, ALV012047-48. In fact, in at least one of the commercial lease agreements for Alvantor, the tenant is identified as

"Alvantor Industry Co. Ltd./Lun Xu." Townes Decl. Ex. 8 at ALV011995. Xuduo Wen, moreover, is listed as the personal guarantor, along with Lun Xu, on EighteenTek's commercial leases. *Id*. Ex. 8 at ALV012019-20, ALV012047-48.

A personal guarantee of a lease is evidence that the individual is holding themself out as personally liable for the entity's debts. *Truebridge v. Thaler*, No. A143287, 2017 WL 1179398, at *2 (Cal. Ct. App. Mar. 30, 2017) (not officially published) (affirming that the company CEO was the alter ego of the company, in part, because his personal guaranty of the company's lease. This was "evidence that he held himself out as personally liable for the [company's] debts.").

*Shanghai Automation*, cited by Defendants, is particularly relevant here. There, alter ego liability was found in large part because the individuals held themselves out as personally liable for company debts. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1003 (N.D. Cal. 2001). Similarly, the Individual Defendants have held themselves out as personally liable for the Corporate Defendants' lease obligations.

Accordingly, this factor also weighs in favor of alter ego liability.

**d. Alvantor and EighteenTek Have Not Observed Corporate Formalities**

Jianyong Wen, Lun Xu, and Xuduo Wen have failed to observe any corporate formalities for Alvantor or EighteenTek. Alvantor and EighteenTek do not hold any shareholder or board meetings and do not keep meeting minutes or other basic corporate records. Townes Decl. Ex. 2 at 26:23-25, 27:1-2, 27:11-13, 31:17-25, 32:2-3. They do not have any shareholder agreements, director agreements, or employment agreements. *Id*. at ¶ 21. Contrary to the assertion in their Motion, corporate records simply have not been maintained. *See* Mot. at 14.

It is unclear how many employees Alvantor and EighteenTek actually have. Xu Decl. ¶ 10; J. Wen Decl. ¶ 14. Lun Xu represents that they have seven employees, and Jianyong Wen represents that they have eleven employees. In

*Politte*, the court found persuasive in finding alter ego liability that there were no formal shareholder meetings, no agendas, and no minutes ever recorded. *Politte*, 2012 WL 965996, at *4. Alvantor's and EighteenTek's lack of adherence to corporate formalities also strongly weighs in favor of alter ego liability.

**e. The Individual Defendants Have Complete Control Over the Business Activities of Alvantor and EighteenTek**

Lun Xu and Jianyong Wen have complete control over the operations of Alvantor and EighteenTek and are the sole decisionmakers for these two entities. Jianyong Wen has claimed that he [redacted] Townes Decl. Ex. 3 at 59:3-15. As for salaries, including his own, Jianyong Wen has testified [redacted] *Id*. Ex. 3 at 212:10-18, 213:14-16. Lun Xu and Jianyong Wen are [redacted] *Id*. Ex. 3 at 257:24-258:8. Lun Xu and Jianyong Wen are the only decision makers for Alvantor. *Id*. Ex. 2 at 31:4-12. The same accounting firm prepares the Corporate Defendants' tax returns and the individual defendants' tax returns. J. Wen Decl. ¶ 18. Accordingly, this factor also weighs in favor of finding alter ego liability.

**f. The Failure to Apply Alter Ego Liability Would be Inequitable and Promote Injustice**

"[T]he issue is not so much whether, for all purposes, the corporation is the 'alter ego' of its stockholders or officers, nor whether the very purpose of the organization of the corporation was to defraud the individual who is now in court complaining, as it is an issue of whether in the particular case presented and for the purposes of such case justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form." *Safety PPE, LLC v. Skanda Group of Industries LLC*, No. CV 21-3967-JFW(PDx), 2023 WL 2558549, at *10 (C.D. Cal. Feb. 13, 2023) (*quoting Kohn v. Kohn*, 95 Cal. App. 2d 708 (1950)). Here, the purposes of justice and equity can best be

accomplished, and unfairness defeated, by disregarding the corporate forms of Alvantor and EighteenTek.

The Individual Defendants used corporate funds for personal expenses such as super-luxury vehicles. They made false statements on corporate and tax filings such as their statements regarding Xuduo Wen's roles and time devoted to business operations. They have also made false statements in their declarations in support of their Motion, including that they have not held themselves out as personally liable for the debts or liabilities of the Corporate Defendants. Further, it is unclear as to the current capitalization of the Corporate Defendants, since Defendants have intentionally withheld relevant documents.[5] Even the statements they have made regarding capitalization are inaccurate. The Individual Defendants' declarations state that Alvantor received an initial capital infusion of $1,038,472 from its shareholders. The tax returns, however, state that there was a loan, not a capital contribution in that amount. Townes Decl. Ex. 5 at ALV009487. They make no representation regarding any capitalization of EighteenTek.

It is irrelevant that Alvantor and EighteenTek were formed for the business purpose of selling tent products and not for the purpose of defrauding Plaintiff. There is no such requirement that the corporate entities were formed for the purposes of committing fraud or specifically for the purpose of defrauding a particular party. *See Safety PPE*, 2023 WL 2558549, at *10.

Contrary to Defendants' assertion, simply because the Corporate Defendants conduct legitimate business does not mean that the corporate veil remains intact. Defendants' main argument in support of not finding alter ego liability is that Alvantor and EighteenTek conduct legitimate business. However, this is not the

[5] Defendants claim that, as of 2023, the Corporate Defendants had assets of nearly $6 million. Mot. at 5. However, it is unclear whether the Corporate Defendants still have these assets. Moreover, Defendants are relying on the 2023 federal tax returns of Alvantor and EighteenTek for this assertion. These tax returns are inadmissible hearsay where used to prove the amount of the assets.

test. Alter ego liability can be found even where the company conducts legitimate business. *See Comprehensive Toxicology Billing, LLC v. Nord*, No. CV 14-07806-VAP (Ex), 2017 WL 11639338, at *19 (C.D. Cal. Jan. 10, 2017) (finding genuine issues of material fact as to alter ego liability, and the evidence showed that the company conducted legitimate business a medical billing company); *Wallach v. Soroudi,* No. CV 06-04133 DDP (SHx), 2008 WL 11336829, at *4 (C.D. Cal. Oct. 21, 2008) (defendant's allegation that its business is legitimate was insufficient to create a genuine issue of material fact as to alter ego liability, and the court granted summary judgment of alter ego liability).

Further, Defendants misquote the *Gerritsen* case and misstate the standard for an inequitable result. Mot. at 17. In *Gerritsen*, the Court stated that, "[t]he 'inequitable result' prong of alter ego liability exists to address circumstances in which 'adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.' Bad faith is a critical factor in the analysis." *Gerritsen v. Warner Bros. Entm't. Inc.*, 116 F. Supp. 3d 1104, 1143 (C.D. Cal. 2015). Contrary to their assertion, *Gerritsen* does not state that "evidence of past fraudulent conduct to avoid financial liability or injustice is necessary to support a finding of alter ego liability." Mot. at 18. Here, the evidence shows that Defendants acted in bad faith. Among other things, they made misrepresentations on corporate filings and tax returns and used corporate funds for personal expenses.

*Perfect10*, cited by Defendants, is distinguishable. There, the only evidence to support the alter ego theory was the company's history of removing capital from the company and its operation of a risky business. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677-78 (9th Cir. 2017). There is significantly more evidence of alter ego liability here.

Given the facts set forth above, it would be inequitable and promote injustice to not apply alter ego liability here.

**g. Defendants Have Withheld Information on the Capitalization of Alvantor and EighteenTek, and The Information in Their Motion is Inadmissible Hearsay**

In their Motion, Defendants claim that Alvantor received an initial cash infusion of $1,038,472 from its stockholders, but Defendants provide no information to substantiate this claim. Mot. at 12. The tax returns show a loan, not a capital contribution. Townes Decl. Ex. 5 at ALV009487. Defendants claim that, as of 2023, the Corporate Defendants had assets of nearly $5.8 million. Mot. at 13. However, it is unclear whether the Corporate Defendants still have these assets two years later. Moreover, Defendants are relying on the 2023 federal tax returns of Alvantor and EighteenTek for this assertion. These tax returns are inadmissible hearsay. In fact, Jianyong Wen testified that Alvantor only has [redacted]. Townes Decl. Ex. 3 at 184:25-185:18.

As discussed in more detail below, Plaintiff has requested documents relating to Defendants' capitalization, and Defendants have withheld these documents.

**h. Defendants Should Be Precluded From Relying on Documents That Were Not Produced During Discovery**

Defendants failed to produce all of the documents relied on in support of their Motion for Summary Judgment. Specifically, Defendants did not produce Exhibits 2 and 4 to the Declaration of Jianyong Wen. Townes Decl. ¶ 27. Thus, Defendants should be precluded from relying on these documents in support of their Motion.

Defendants committed a discovery violation by failing to provide all documents that they may use to support their defenses. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii); *James Stewart Ent., LLC v. L&M Racing, LLC*, No. ED-CV-1249-JGB-SPX, 2013 WL 12248146, at *8 (C.D. Cal. June 28, 2013) ("Here, the court finds Kranyak committed a discovery violation by failing to provide 'all documents' that he 'may use to support [his] ... defenses....'") Similar to here, in *James Stewart Entertainment v. L&M Racing*, the defendant, in response to plaintiff's claim that

defendant was the alter ego of L&M, referenced documents and information concerning the defendant's personal finances, his loans to L&M, and his withdrawals from L&M accounts in support of his contention that there is no evidence for plaintiff's alter ego claim. However, many of the documents that were referenced were undisclosed and unproduced to plaintiffs. Thus, defendant was precluded from relying on them to support his motion for summary judgment. *Id.*

Accordingly, Exhibits 2 and 4 to the Declaration of Jianyong Wen and any references to these documents should not be considered in deciding Defendants' Motion for Summary Judgment.

**V. Plaintiff has Shown that There are, at a Minimum, Genuine Disputes of Material Fact, but Even if it has Not, Defendants' Motion for Summary Judgment Should Be Denied Because the Facts and Current Status of the Case Warrant Further Discovery**

There is more than sufficient evidence to show that there are at least genuine issues of material fact as to alter ego liability, and this Court should deny this Motion in light of this evidence. However, if more evidence were needed, Plaintiff should be permitted additional time to take discovery. Defendants have intentionally delayed in producing documents responsive to Plaintiff's discovery requests and stalled depositions to prejudice Plaintiff in opposing this Motion.

Federal Rule of Civil Procedure 56(d) provides that, if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or allow additional time to take discovery. In making a Rule 56(d) motion, a party opposing summary judgment "must make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F. 3d 850, 853 (9th Cir. 1998) *citing Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987); *Burnett v. Frayne*, No. C 09-04693 SBA (PR), 2011 WL 5830339, at *1 (N.D. Cal. Nov. 18, 2001).

Plaintiff has not had the opportunity to specifically depose Jianyong Wen, Lun Xu, or Xuduo Wen or conduct Rule 30(b)(6) depositions of Alvantor and EighteenTek regarding Plaintiff's alter ego claim, the declarations submitted in support of Defendants' Motion, or the documents produced by Defendants in response to alter ego discovery.[6] Plaintiff's alter ego claim was recently added to this case on March 10th. Dkt. No. 130. Defendants filed their Motion on June 30th, and this Opposition is due on July 14th. The close of discovery for the new issues in this case including Plaintiff's alter ego claim is not until July 18th. Dkt. No. 143.

Plaintiff served deposition notices on June 12, 2025, more than one month before the close of discovery for the new issues. Townes Decl. ¶ 14. Plaintiff noticed the depositions of Jianyong Wen, Lun Xu, and Xuduo Wen for July 9-11. *Id*. However, Defendants' counsel informed Plaintiff that Xuduo Wen was not available on July 9th due to his academic schedule and that Jianyong Wen and Lun Xu were in China on July 10th-11th. *Id*. at ¶ 15. Thus, the depositions were taken off calendar for these dates.

These depositions will likely reveal additional information highly relevant to Plaintiff's opposition to Defendants' Motion. Defendants have made several inconsistent statements which warrant depositions. For example, Lun Xu and Xuduo Wen state in their declarations in support of Defendants' Motion that they have never held themselves out as personally responsible for Alvantor's and EighteenTek's debts and liabilities. However, Lun Xu and Xuduo Wen are personal guarantors for Alvantor's and EighteenTek's commercial leases. J. Wen Decl. Ex. 8; Townes Decl. Ex. 6 at ALV011969, ALV011995, ALV012001, ALV012019-20, ALV012047-48. These commercial leases were produced by Defendants on June 25, 2025. Townes Decl. ¶ 7. In her declaration, Lun Xu claims that Alvantor and

[6] Plaintiff notes that it did elicit testimony supporting its alter ego claims during the course of depositions taken in the original discovery period in this case, and that testimony is cited in this Opposition.

EighteenTek currently have seven employees. Xu Decl. ¶ 10. However, Jianyong Wen claims that Alvantor and EighteenTek have eleven employees. J. Wen Decl. ¶ 14.

Further, Defendants produced 2022 and 2023 federal tax returns of Alvantor and EighteenTek on June 19, 2023 that identify luxury vehicles as corporate assets. Townes Decl. ¶¶ 5-6. Plaintiff has not had the opportunity to depose Defendants regarding the use and purpose of these vehicles.

Plaintiff has not received all documents responsive to Plaintiff's discovery requests regarding its alter ego claim. Plaintiff was granted leave to amend its Complaint on March 6, 2025 to include its alter ego claim. Dkt. No. 129. Plaintiff filed its amended complaint on March 10th, and served its discovery requests on March 26, a mere 16 days after the claims were added to the case. Dkt. No. 130; Townes Decl. ¶ 16. Defendants served responses on April 25. *Id*. at ¶ 18. Plaintiff allowed Defendants a few weeks to produce responsive documents. *Id*. at ¶ 19. When Plaintiff still had received no responsive documents, Plaintiff sent a letter on June 3 notifying Defendants of their failure to produce responsive documents. *Id*. at ¶ 20. Defendants did not produce any responsive documents until June 19th after Plaintiff sent a meet and confer letter, and, to date, the document production remains deficient. *Id*. Contrary to Lun Xu's statement in her declaration, Alvantor and EighteenTek have not submitted their complete records to Plaintiff. Lun Xu Decl. ¶ 19.

On June 27, 2025, Plaintiff filed a motion to compel. Dkt. No. 145. The Court granted this Motion to Compel and has ordered the Defendants to produce all documents responsive to Plaintiff's requests for production relating to its alter ego claim. Dkt. No. 148. However, the Court ordered Defendants to produce all responsive documents by July 18th. *Id*. Thus, Plaintiff will not receive all of these documents until after this Opposition is due.

These documents include documents relating to capital contributions made

by the Individual Defendants to the Corporate Defendants, the identity of law firms and attorneys representing the defendants, communications regarding ownership, control, and management of the corporate defendants, bank statements of Jianyong Wen and the Corporate Defendants, expenses paid by Corporate Defendants on behalf of Individual Defendants and vice versa, certain credit card statements, the Individual Defendants' use of property owned by the Corporate Defendants, and ownership of stock. Townes Decl. ¶¶ 23-26. These are all documents that are highly relevant to Defendants' Motion. For example, bank and credit card statements[7] may show that additional personal expenses of the Individual Defendants are paid by the Corporate Defendants and vice versa and would support further commingling of funds. Documents regarding capital contributions will establish the identity of the individuals who provided capital contributions to the Corporate Defendants.[8] Further, these documents may show the current capitalization of the Corporate Defendants.

These documents may also contradict the assertions in the Individual Defendants' declarations in support of their Motion such as, "[n]either I, nor Alvantor or EighteenTek, has ever had a bank account where our monies were commingled," or "I have never commingled my personal funds with those of [EighteenTek or Alvantor], or made an unauthorized diversion of corporate funds

[7] On July 11, 2025, Defendants produced Alvantor's credit card statements from 2022-2025. Townes Decl. ¶ 26. However, Defendants have not produced any of EighteenTek's credit card statements or any of Alvantor's credit card statements prior to 2022. *Id.*

[8] In their Motion, Defendants claim that Alvantor received an initial capital infusion of $1,038,472 from its stockholders. That statement is contradicted by the tax documents that Defendants rely on to support that statement. The tax documents show that the amount was a loan, not a capital infusion, and Defendants provide no information as to whether that loan came from the Individual Defendnants, Ningbo Leedor, or some combination of them. Defendants make no claim regarding a capital infusion to EighteenTek. but it is unclear whether this cash infusion came from Lun Xu or Ningbo or both or whether the infusion occurred at all.

or assets other than for corporate uses." *See* X. Wen Decl. ¶¶ 9, 10; J. Wen Decl. ¶ 25; Lun Xu Decl. ¶ 22. The documents may also further contradict assertions in the Motion such as "[a]ll corporate expenses … are paid through the corporate entities' bank accounts" or "[t]he individual Defendants maintain separate bank accounts." Mot. at 5, 13.

If this Court does not find that Plaintiff has set forth sufficient evidence to establish that there is a genuine issue of material fact as to alter ego liability, then Plaintiff should be given the opportunity to complete its discovery regarding its alter ego claim.

## VI. CONCLUSION

The evidence shows that there is, at a minimum, a genuine issue of material fact as to whether alter ego liability should be applied, and Plaintiff therefore requests that this Court deny Defendants' Motion for Summary Judgment. However, if this Court believes that more evidence is necessary, Plaintiff should be given the opportunity to conduct additional discovery.

Respectfully submitted,

Dated: July 14, 2025

FRIEDLAND CIANFRANI LLP

By: */s/ Michael K. Friedland*
Michael K. Friedland
Joseph S. Cianfrani
Nicole R. Townes
David G. Kim
Matt Pham
Attorneys for Plaintiff and Counterclaim-Defendant Under the Weather, LLC