UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-08343-MRA-E | Date | March 4, 2026 |
| Title | *Under the Weather, LLC v. Alvantor Industry Co. Ltd. et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Melissa Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [146]**

Before the Court is Defendants' Motion for Summary Judgment to Dismiss all Individual Defendants with Prejudice (the "Motion"). ECF 146. The Court read and considered the moving, opposing, and reply papers, as well as additional supplemental briefing, and held a hearing on August 25, 2025. ECF 180. For the reasons stated herein, the Court **GRANTS** the Motion.

## I. BACKGROUND

Plaintiff Under the Weather, LLC ("Plaintiff" or "UTW"), a tent company, brings this trademark infringement action against two companies, Alvantor Industry Company Ltd. ("Alvantor") and EighteenTek, Inc. ("EighteenTek") (collectively, "Corporate Defendants"), and three individuals, Jianyong Wen, Lun Xu, and Xuduo Wen (collectively, "Individual Defendants"), alleging that Defendants infringed on UTW's protected intellectual property and engaged in unfair business practices in violation of California law. ECF 130. UTW alleges that "Defendants sell personal enclosures under the names Alvantor and Eighteentek," and that Defendants have prominently displayed UTW's registered trademarks in connection with the sale of those personal enclosures. *Id.* ¶¶ 22–23. UTW claims that the Corporate Defendants are the alter egos of the Individual Defendants, and that "Alvantor and EighteenTek share a unity of interest and ownership with each other," and that "each of the Individual Defendants share a unity of interest and ownership with Alvantor and EighteenTek." *Id.* ¶¶ 46–47. UTW further claims that "the Individual Defendants treated the assets of Alvantor and EighteenTek as their own, commingled assets, and failed to segregate funds." *Id.* ¶ 48.

In the instant Motion for Summary Judgment, Defendants argue that the Individual Defendants should be dismissed from this action with prejudice, because there is no genuine issue of material fact that the Individual Defendants are not the alter egos of the Corporate Defendants,

and therefore cannot be held liable as a matter of law.

### A. Factual Background[1]

Since 2011, Individual Defendants Jianyong Wen and Lun Xu, who are married, have owned and operated Corporate Defendant Alvantor, a tent company. ECF 174-1 ¶¶ 1, 4, 8. Alvantor sells various tent products through online retail fronts (such as Amazon.com, Walmart.com, Wayfair.com, Target.com, etc.) and social media. *Id.* ¶¶ 11–15. To maximize market share, in 2020, the Individual Defendants formed a sister tent company, Corporate Defendant EighteenTek. *Id.* ¶ 18. Like Alvantor, EighteenTek sells tent products online and through social media. *Id.* ¶ 34. The Individual Defendants obtained trademark protection for Alvantor and EighteenTek in 2017 and 2020, respectively. *Id.* ¶¶ 16, 23. Over the past decade, the companies have developed a patent portfolio of 42 separate patents. *Id.* ¶ 35. Both companies are also registered with the California Secretary of State and have maintained payroll and paid taxes since their inception.[2] *Id.* ¶¶ 5, 19, 28. The companies employ between seven and 11 employees. *Id.* ¶ 27.

The Individual Defendants are the only officers and directors of Alvantor and EighteenTek. ECF 178-2 ¶ 1. Jianyong Wen and Lun Xu designated their son, Individual Defendant Xuduo Wen, as Chief Executive Officer and Chief Financial Officer of EighteenTek, and the parties

[1] The Court has reviewed and considered all evidence in the record, including declarations and documentary evidence. Unless otherwise indicated, the facts set forth in this section are undisputed and taken from Plaintiff's Supplemental Response to Defendants' Statement of Uncontroverted Facts and Additional Material Facts, ECF 174-1. To the extent there is a factual dispute, the Court cites to Defendants' Reply to Plaintiff's Supplemental Response and Additional Material Facts. ECF 178-2. District courts are not required to make findings of fact on a motion for summary judgment. Fed. R. Civ. P. 52(a)(3). Instead, the Court "may assume that the material facts as claimed and adequately supported by the moving party are admitted existing without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) controverted by declaration or other written evidence filed in opposition to the motion." L-R 56-4; *see also* Fed. R. Civ. P. 56(c). Plaintiff also filed evidentiary objections to two of Defendants' declarations. ECF 154, 155. The Court addresses evidentiary objections only to the extent necessary. Where the Court relies on objected-to evidence, the relevant objections are overruled.

[2] Plaintiff states that payroll and tax records may not be accurate because the Individual Defendants have made some direct payments to employees, as discussed in greater detail below. ECF 174-1 ¶ 28 (citing Exs. 12, 13 to Pham Decl.).

appear to agree that Xuduo Wen's involvement in the company was minimal.[3] ECF 174-1 ¶ 45. Jianyong Wen serves as the General Manager of both Alvantor and EighteenTek, as well as the Chief Financial Officer of Alvantor. *Id.* ¶ 46, ECF 178-2 ¶ 5. Lun Xu serves as the Chief Executive Officer, Secretary, and sole Director of Alvantor and the Assistant Secretary of EighteenTek. ECF 178-2 ¶¶ 2, 3.

Defendants produced banking records and tax filings for the Corporate Defendants dating back to 2011, as well as the Individual Defendants' tax returns. ECF 174-1 ¶ 21. The assets and equity of the Corporate Defendants are relevant to Plaintiff's allegations that the Corporate Defendants are the alter egos of the Individual Defendants. When Alvantor was formed, it received $1,038,472 from its shareholders.[4] *Id.* ¶ 20. According to Defendants' Motion, Alvantor maintained the following assets in the years following its incorporation:

| Year | Total Assets |
|---|---|
| 2012 | $1,077,611 |
| 2013 | $1,105,849 |
| 2014 | $1,115,827 |
| 2015 | $1,135,037 |
| 2016 | $1,172,868 |
| 2017 | $1,268,999 |
| 2018 | $1,336,512 |
| 2019 | $1,500,605 |
| 2020 | $1,550,307 |
| 2021 | $1,647,300 |
| 2022 | $1,176,585 |
| 2023 | $4,220,794 |

*See* ECF 174-1 ¶¶ 29, 30, 31, 32 (citing Jianyong Wen Decl. Exs. 10, 11, 12, 13).

[3] Defendant Xuduo Wen's Declaration states that he "did not have significant involvement in the business," whereas he testified at his deposition that he "performed no duties" as an officer of EighteenTek. *Compare* Xuduo Wen Decl. ¶¶ 6, 7 *with* Townes Decl. Ex. 1 at 19:24- 20:11, 44:14-45:20, 52:9–11.

[4] Defendants describe this money as a "capital infusion," *see* ECF 146-2 (Jianyong Wen's Declaration ("Jianyong Decl.")), while UTW characterizes it as a loan from shareholders, ECF 174-1 ¶ 20. Both parties cite to a page from a tax return, which lists the $1,038,472 under "Loans from shareholders." Jianyong Dec. Ex. 10 at 1).

Similarly, in the years following its incorporation, EighteenTek maintained the following assets:

| Year | Total Assets |
|---|---|
| 2020 | $261,179 |
| 2021 | $64,314 |
| 2022 | $353,496 |
| 2023 | $1,642,909 |

*See* ECF 174-1 ¶¶ 29, 30, 31, 33 (citing Jianyong Decl. Exs. 10, 11, 12, 13).

Based on this information, Defendants explain that the companies' 2023 tax returns show that Alvantor and EighteenTek have combined net assets and equity worth over $5.8 million, with more than $4 million of that amount attributable to Alvantor and more than $1.6 million attributable to EighteenTek. *Id.* ¶¶ 29, 30. Defendants further represent that the companies' tax filings show that neither company has any debt, and that both companies generated substantial revenues in the last five years, with over $15 million in gross receipts in 2021. *Id.* ¶¶ 30, 31. Finally, Defendants state that Alvantor's revenues for 2022 were $12,673,763 and EighteenTek's revenues for 2023 were $2,887,937.[5] *Id.* ¶¶ 32 (citing Jianyong Decl. ¶ 23, Ex. 11), 33 (citing Jianyong Decl. ¶ 24, Ex. 11). It is undisputed that there are no liens or unsatisfied judgments against EighteenTek or Alvantor. ECF 174-1 ¶ 44.

[5] These tables and figures are derived from Alvantor's and EighteenTek's tax documents. *See* Jianyong Decl. Exs. 10–13. Plaintiff does not dispute these facts substantively but rather disputes the admissibility of the tax documents, arguing that they are hearsay because the information was "prepared by an accountant" and therefore the declarant (here, Defendant Jianyong Wen) does not have personal knowledge as to the truth of the contents. *Id.* ¶¶ 29–33. The Court overrules these objections because at the summary judgment stage, the Court focuses not on the admissibility of the evidence's form but on the admissibility of its contents. *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). To the extent Defendants seek to use these tax records for the truth of the matters asserted therein (rather than for a non-hearsay purpose), the contents of those records could be properly admitted through witness testimony at trial. Moreover, the tax documents may be admissible under the public records exception to the hearsay rule. *United States v. Stefani*, 338 F. App'x 579, 581 (9th Cir. 2009) (holding "[defendant's] personal tax returns were admissible as certified tax returns are admissible under the public records exception to the hearsay rule").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-08343-MRA-E | Date | March 4, 2026 |
| Title | *Under the Weather, LLC v. Alvantor Industry Co. Ltd. et al.* | | |

The parties dispute whether the Defendants comingle assets. It is undisputed that the Individual Defendants maintain separate bank accounts from the Corporate Defendants. *Id.* ¶ 36.[6] It is also undisputed that the Corporate Defendants maintain inventory lists, and that the Individual Defendants do not personally own the inventory. *Id.* ¶ 40.

The parties dispute, however, whether the Individual Defendants paid all personal expenses through their personal accounts, and whether all corporate expenses were paid through the Corporate Defendants' accounts. *Id.* ¶ 37. Plaintiff states that the Individual Defendants use the Corporate Defendant accounts to pay for personal expenses, including luxury vehicles. *Id.* For example, Plaintiff states that the Corporate Defendants paid for at least three luxury vehicles—a $300,000 Bentley, a $150,000 Tesla, and an unidentified $100,000 vehicle—that were personally used by the Individual Defendants. *Id.* (citing Townes Decl. Exs. 4, 5). Defendants respond that this is not evidence that corporate assets paid for personal expenses, because the vehicles are used for at least 50% qualified business use. ECF 178-2 ¶¶ 28–30.

Plaintiff further states that between March 2022 and October 2024, Alvantor paid Defendant Lun Xu's personal expenses, including department store purchases, cigars, and merchandise from a Louis Vuitton store in Tokyo. ECF 174-1 ¶ 37. Defendants, citing Lun Xu's deposition testimony, respond that these were not personal purchases but rather that the Individual Defendants occasionally paid business expenses on behalf of the Corporate Defendants, and the Corporate Defendants would periodically reimburse the Individual Defendants for those purchases. *Id.* ¶ 45 (citing Zhang Decl. Exs. 7, 8). Plaintiff also identifies payments sent over the online banking tool Zelle which indicate that, on at least one occasion, each of the Individual Defendants directly paid Alvantor employees from their personal accounts. ECF 174-1 ¶¶ 38, 39, 42, 43 (citing Exs. 4, 8, 10, 13 to Pham Decl.). Plaintiff further states that the Individual Defendants "repeatedly held themselves out as personally liable for the debts of the Corporate Defendants, including [by] expressly guarantying several commercial leases." *Id.* ¶ 38 (citing Jianyong Decl. Ex. 8, Townes Decl. Ex. 8).

Plaintiff identifies a series of significant transactions among the Individual Defendant and Corporate Defendant accounts that occurred around the time UTW initiated this action, which, according to Plaintiff, demonstrates improper comingling of funds sufficient to support an alter ego finding. The timeline and details of these transactions, which are undisputed unless

[6] Plaintiff's assertion that Defendants Jianyong Wen and Lun Xu, a married couple, share a private bank account does not create a genuine dispute as to whether the Individual Defendants maintain separate accounts from the Corporate Defendants.

otherwise noted, are laid out below:

**<u>October 1, 2023</u>**

As of October 1, 2023: an Alvantor bank account ending in 6738 ("6738 account") had a balance of $1,523,193.11; an Alvantor bank account ending in 6550 ("6550 account") had a balance of $1,101,621.69; and a EighteenTek bank account ending in 0348 ("0348 account") had a balance of $844,506.90. ECF 178-2 ¶ 49 (citing Pham Decl. Exs. 1, 5).

**<u>October 4, 2023</u>**

On October 4, 2023, UTW initiated this lawsuit against the Corporate Defendants. *Id.* ¶ 50 (citing ECF 1).

**<u>October 6, 2023</u>**

On October 6, 2023, Alvantor transferred $1,600,000 out of its 6738 account to a bank account owned by Individual Defendant Lun Xu (the "Xu account"). *Id.* ¶ 51. Alvantor also transferred $1,080,000 from the 6550 account to the Xu account. *Id.* Defendants contend that "[d]ue to a potential fraud issue with Alvantor's corporate account ending in 6738, Lun Xu was instructed by her bank to transfer the funds to a safe account." *Id.*

On the same day, EighteenTek transferred $850,000 from its 0348 account to another EighteenTek account ending in 4111. *Id.* (citing Pham Decl. Exs. 1, 5). Defendants contend that this was a transfer "to Eighteentek's own domestic savings account as part of normal course of business." *Id.*

**<u>October 11, 2023</u>**

On October 11, 2023, the Xu account transferred the full amounts withdrawn on October 6 ($1,600,000, from the 6378 account, and $1,080,000, from the 6550 account) back to the respective Alvantor accounts. *Id.* ¶ 52.

On the same day, the 6550 account transferred $1,100,00 to a separate Alvantor account ending in 0669 ("the 0669 account"). *Id.*

**<u>October 12, 2023</u>**

By October 12, 2023, Alvantor's 0669 account balance increased from $103,361.20 to $2,592,361.20; Alvantor's 6738 account balance decreased from $1,523,193.11 to

$43,342.92; and Alvantor's 6550 account balance decreased from $1,101,621.69 to $2,621.69. *Id.* ¶ 53. EighteenTek's 4111 account increased from $104,850.81 to $954,850.81. *Id.*

It is undisputed that from October 12, 2023, to March 25, 2024, Alvantor's account ending in 0669 remained above $2,500,000, had no withdrawals, and gained no money other than interest. *Id.* ¶ 54. Similarly, it is undisputed that, during this same period, the EighteenTek 411 account remained above $950,000, had no withdrawals, and gained no money other than interest. *Id.* On November 15, 2024, UTW moved for leave to file an amended complaint naming the Individual Defendants as defendants in this lawsuit. *Id.* ¶ 58 (citing ECF 87). Plaintiff states that "Alvantor all but wiped out one of its bank accounts" from January 16–17, 2025, by wiring $2,980,000 out of the 6033 account to an "unknown" account ending in 3239. *Id.* ¶ 59. Similarly, Plaintiff states that "EighteenTek all but wiped out one of its bank accounts" on January 22, 2025, by wiring out $1,330,000 to unidentified accounts. *Id.* ¶ 60. Defendants do not dispute that these transactions occurred but claim that these outbound transactions were payments to their supplier made during the normal course of business. *Id.* ¶¶ 59, 60 (citing Zhang Decl. Ex. 5).

### B. Procedural History

Plaintiff initiated this action in October 2023. ECF 1. After multiple modifications of the scheduling order, on March 6, 2025, the Court granted Plaintiff leave to file a First Amended Complaint. ECF 130. On April 18, 2024, Defendants filed an Answer. ECF 137. On June 30, 2025, Defendants filed the instant Motion for Summary Judgment (the "Motion"), limited to whether there is a genuine dispute that the Individual Defendants are the alter egos of the Corporate Defendants. ECF 146. Plaintiff filed an Opposition and Defendants filed a Reply. ECF 159, 168. On August 7, 2025, the Court granted Plaintiff's *ex parte* application for leave to file a supplemental brief in support of its Opposition to the Motion and permitted Defendants to reply to the supplemental brief. ECF 173, 174, 178. On August 25, 2025, the Court held a hearing on the Motion and took the Motion under submission. ECF 180.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Entry of judgment is appropriate "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Material facts are those which may affect the outcome of the case." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185

(9th Cir. 2006); *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008); *Anderson*, 477 U.S. at 248. "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long*, 442 F.3d at 1185; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party does not bear the burden of proof at trial, it need only show that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met this initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (en banc). The court must grant summary judgment for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *Groh v. Ramirez*, 540 U.S. 551, 562 (2004). However, "facts must be viewed in the light most favorable to the nonmoving party only if" the dispute as to those facts is "genuine." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). A plaintiff's claims do not survive summary judgment where merely a "scintilla of evidence" supports them. *Anderson*, 477 U.S. at 252. Rather, "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (requiring more than a "metaphysical doubt" to establish a genuine dispute of material fact).

## III. DISCUSSION

Defendants argue Plaintiff has not established that a genuine issue of material fact exists to support a legal theory for alter ego such that liability may be imposed on the Individual Defendants, and that the Court should therefore award summary judgment on this issue. *See generally* ECF 146.

Alter ego is an equitable doctrine based on California Civil Code § 3528, which states simply: "The law respects form less than substance." Under the alter ego doctrine, "where a

corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation." *See Webber v. Inland Empire Invs.*, 74 Cal. App. 4th 884, 900 (1999).

Usually, the alter ego doctrine is "reserved for the parent-subsidiary relationship" and arises when a plaintiff alleges that one corporation is acting as the alter ego of another corporation. *See Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991). However, the alter ego theory also allows individuals to be held liable for a corporation's actions. *See Fair Hous. Council of Riverside Cnty., Inc. v. Grp. XIII Props. LP*, No. EDCV 21-941 JGB (KKX), 2023 WL 4680764, at *23 (C.D. Cal. April 27, 2023) (explaining California courts have imposed alter ego liability on individuals where the individual forms a corporate entity "that is essentially a corporate shell for his or her personal affairs.").

A party asserting the doctrine must show two requirements: "(1) a unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist; and (2) that an inequitable result will follow if the acts are treated as those of the corporation alone." *Webber*, 74 Cal. App. 4th at 899. The California Supreme Court has stated that "the corporate form will be disregarded only in narrowly circumscribed circumstances and only when the ends of justice so require." *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290 (1985); *see also Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 836 (2000) ("Alter ego is an extreme remedy, sparingly used.").

### A. Unity of Interest

Although Defendants focus their Motion on the second prong of the alter ego doctrine, ECF 146 at 22–26, the Court first addresses whether Plaintiff has demonstrated a genuine triable issue as to the unity of interest between the Corporate Defendants and the Individual Defendants.

In assessing the unity of interest prong, "courts consider numerous factors, including inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *See Virtualmagic Asia, Inc. v. Fil–Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002) (citations omitted). "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." *Id.*

In support of their respective positions, both parties cite cases where the court ultimately found individuals liable for wrongdoing under the alter ego theory. For example, in a case Plaintiff cites, *Politte v. United States*, a family sought a refund of taxes from the United States government after the government determined that the family had used various corporations as their alter egos. No. 07cv1950 AJB (WVG) 2012 WL 965996, * 1 (S.D. Cal. Mar. 21, 2012). In *Politte*, the district court found that the first prong of the alter ego test was satisfied because the Polittes commingled funds and other assets; diverted corporate funds for personal purposes, including renovation of their private home, college tuition for their children, purchases of personal vehicles and recreational activities; were the sole owners of all of the corporate stock; exercised dominion and control over the corporations and unilaterally made decisions and changed policies; and used the corporation as a mere conduit for their various businesses and personal finances. *Id.* at *10.

Similarly, in a case Defendants cite, *Say & Say, Inc. v. Ebershoff*, a California court found that Say & Say Inc. was the alter ego of an individual named Mr. Shieh, where Mr. Shieh admitted "he did not want to appear as the owner of the corporation" despite singlehandedly controlling every aspect of the corporation's affairs. 20 Cal. App. 4th 1759, 1764 (1993). There, the court noted that "[a]ll of the conduct of the corporate employees was subject to Mr. Shieh's personal supervision," and there was "no evidence of any separateness between the conduct of Mr. Shieh and the manner in which he conducted his activities." *Id.* at 1769. Under these circumstances, the court ultimately concluded that the company was created for the express purpose of "protect[ing] [the individual] from the consequences of litigation." *Id.*

Defendants argue that Plaintiff has not met its heavy burden of proof to show that the Court should overcome the presumption of corporate separateness and determine that the Individual Defendants are alter egos of the Corporate Defendants as a matter of law.[7] Unlike the corporate defendants in *Politte* and *Say Say, Inc.*, here, it is undisputed that "the Individual Defendants created Alvantor and EighteenTek for the separate, legitimate business purpose of selling tents to the public." ECF 146 at 16. As Defendants point out, the underlying trademark dispute is

[7] At the outset, the Court notes that some of the factors that courts consider when determining alter ego do not apply when the alleged alter ego is an individual (or multiple individuals) as opposed to another corporation. For example, factors such as "identical equitable ownership," "use of the same offices and employees," "lack of segregation of corporate records," and "identical officers and directors" would all be factors the court would consider if Plaintiff were arguing that Alvantor and EighteenTek were alter egos of one another, but are not helpful in the context of Plaintiff's actual argument that the Individual Defendants are alter egos of both Alvantor and EighteenTek.

unlikely to have ever arisen if the Corporate Defendants were not actual corporate players in the tent industry—*i.e.,* sham corporations would not have been able to amass enough market share to pose a credible threat to UTW's business. *Id.* at 17. Additionally, there is minimal evidence of inadequate capitalization: apart from the five-day period in October 2023, the Corporate Defendants were not severely undercapitalized any given year. Rather, the provided tax records indicate that Alvantor maintained at least a million dollars' worth of assets every year between 2012 and 2023, and that EighteenTek, a newer company, had accrued over a million dollars' worth in assets by 2023. *See* ECF 174-1 ¶¶ 29, 30, 31, 32, 33. It is also undisputed that the Corporate Defendants are not in debt or have ever failed to pay a creditor.

Nevertheless, Plaintiff identifies some commingling of funds between Individual Defendants and the Corporate Defendants: financial records indicate that each of the Individual Defendants sent payments to Corporate Defendant employees in at least one instance, ECF 174-1 ¶ 28, and that there were multiple transactions between a bank account belonging to Individual Defendant Lun Xu and the Corporate Defendants, ECF 178-2 ¶¶ 51–53. Defendants offer alternative explanations for these transactions and otherwise attempt to explain why they do not evince commingling. At the summary judgment stage, though, the Court may not draw inferences in Defendants' favor and instead must ask whether a reasonable trier of fact could find in Plaintiff's favor. Considering the evidence in the light most favorable to the non-moving party, Plaintiff has raised a genuine triable issue as to whether a unity of interest exists between the Individual Defendants and the Corporate Defendants. *See, e.g.*, *Tan v. Quick Box, LLC*, No. 20CV1082-LL-DDL, 2024 WL 1121795, at *12 (S.D. Cal. Mar. 14, 2024) (denying defendant's motion for summary judgment as to alter ego claim and observing that "[w]hether a party is liable under an alter-ego theory is normally a question of fact"); *GMAC, LLC v. Hiatt Pontiac GMC Trucks, Inc.*, No. C08-5707RJB, 2009 WL 4730838, at *15 (W.D. Wash. Dec. 7, 2009) (denying summary judgment where corporate defendant "did maintain some corporate formalities" but there were nevertheless "sufficient issues of fact as to whether 'the corporate entity has been disregarded'").

The Court will therefore proceed to analyze the second prong of the alter-ego test: whether Plaintiff has established the likelihood of an inequitable result.

### B. Inequitable Result

To establish an inequitable result under the second prong, "a plaintiff must plead facts sufficient to demonstrate that 'conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.'" *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 963 (N.D. Cal. 2015) (quoting *Sonora Diamond Corp.*, 83 Cal. App. 4th at

539). There must be "direct evidence of specific manipulative conduct" for a court to find alter ego. *Inst. of Veterinary Pathology, Inc. v. Cal. Health Labs., Inc.*, 116 Cal. App. 3d 111, 120 (1981). "[A]buse of the corporate privilege by itself does not require that a court disregard the separate identity of a corporation." *Shapoff v. Scull,* 222 Cal. App. 3d 1457, 1471 (1990). Although the specific manipulative conduct "need not be fraud," the potential difficulty of collecting a judgment is not on its own an inequitable result warranting application of the alter ego doctrine. *See Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1176–77 (C.D. Cal. 2016); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003).

Defendants argue Plaintiff fails to allege specific manipulative conduct amounting to bad faith sufficient to support the second prong of the test. ECF 146 at 22–23. Plaintiff responds that, "[a]mong other things, [Defendants] made misrepresentations on corporate filings and tax returns and used corporate funds for personal expenses," which amounts to a showing of bad faith. ECF 163 at 23.

Viewing the evidence in the light most favorable to the non-moving party and considering the totality of the circumstances, the Court concludes that Plaintiff has failed to establish a genuine issue of material fact as to the likelihood of an inequitable result. Plaintiff has not shown why the application of the alter ego doctrine is necessary to prevent harm to Plaintiff rather than the generalized wrong of misusing the corporate form. As explained above, it is undisputed that the Corporate Defendants are not in debt and have never failed to pay a creditor. It is further undisputed that the Corporate Defendants amass significant annual revenue. Plaintiff's concern appears to be that, if it ultimately succeeds in its trademark case against the Corporate Defendants, the Individual Defendants will transfer all assets out of the corporate accounts and somehow abscond with the money before Plaintiff is able to collect its judgment. But this potential and premature concern, which is highly speculative, is not, on its own, sufficient to support an alter ego theory. *See Neilson*, 290 F. Supp. 2d at 1117. "In addition, if [Plaintiff] is unable to collect on any judgment it might obtain against [the Corporate Defendants], it will have a full complement of post-judgment remedies that will enable it to enforce its judgment against [the Corporate Defendants] and any related entities." *Advanced Eng'g Sols. Co., LLC v. Pers. Corner, LLC*, No. CV 20-5955-JFW(PLAX), 2021 WL 1502705, at *6 (C.D. Cal. Feb. 25, 2021) (dismissing alter ego claim); *JT Legal Grp. APC v. Yagoubzadeh L. Firm LLP*, No. CV 21-7033 PA (PDX), 2021 WL 9095879, at *4 (C.D. Cal. Dec. 17, 2021) ("The Court additionally notes that if YLF's efforts to enforce a judgment against JT Legal are inequitably frustrated should it eventually prevail in this action, YLF could potentially pursue an alter ego claim against Ambarchyan or obtain other appropriate relief as a post-judgment remedy." (citing Fed. R. Civ. P. 69(a)).

Accordingly, because Plaintiff does not show why or how an inequitable result is likely to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-08343-MRA-E | Date | March 4, 2026 |
| Title | *Under the Weather, LLC v. Alvantor Industry Co. Ltd. et al.* | | |

occur but for the application of the alter ego doctrine and the piercing of the corporate veil, the Court concludes that no genuine issue of material fact exists to support Plaintiff's alter ego argument, and that Defendants are entitled to judgment as a matter of law on this issue.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Partial Motion for Summary Judgment [146]. The Individual Defendants are hereby **DISMISSED** from this action with prejudice.

**IT IS SO ORDERED.**

\- : -

Initials of Deputy Clerk mku