Michael K. Friedland (SBN 157217)
michael.friedland@fciplaw.com
Nicole R. Townes (SBN 272342)
nicole.townes@fciplaw.com
Matt Pham (SBN 341320)
matt.pham@fciplaw.com
FRIEDLAND CIANFRANI LLP
17901 Von Karman Ave., Ste. 925
Irvine, CA 92614
(949) 734-4900

Attorneys for Plaintiff,
Counterclaim-Defendant Under the Weather, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNDER THE WEATHER, LLC, an Ohio limited liability company;

Plaintiff,

v.

ALVANTOR INDUSTRY COMPANY, LTD., a California corporation, et al.,

Defendants.

---

ALVANTOR INDUSTRY COMPANY, LTD., a California corporation,, et al.,

Counterclaimants,

v.

UNDER THE WEATHER, LLC, an Ohio limited liability company;

Counterclaim-Defendant,

---

UNDER THE WEATHER, LLC, an Ohio limited liability company;

Counterclaimant,

v.

ALVANTOR INDUSTRY COMPANY, LTD., a California corporation, et al.,

Counterclaim-Defendants.

Case No.: 2:23-cv-08343-MRA-E

HON. MÓNICA RAMÍREZ ALMADANI

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR TO ALTER OR AMEND ORDER PURSUANT TO FRCP 60; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

HEARING DATE: May 19, 2026
HEARING TIME: 10:00 a.m.
COURTROOM: 9B, 9th Floor

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 4
*Block v. City of Los Angeles,* 253 F.3d 410 (9th Cir. 2001) .......... 5, 6
*Hughes v. U.S.*, 953 F.2d 531 (9th Cir. 1992) .......... 7, 8
*JT Legal Group APC v. Yagoubzadeh L. Firm LLP,* No. CV 21-7033 PA(PDx), 2021 WL 9095879 (C.D. Cal. Dec. 17, 2021) .......... 12
*Kayne v. Ho*, No. LACV0906816JAKCWX, 2012 WL 12878753 (C.D. Cal. Sept. 6, 2012) .......... 12
*King v. Najm*, No. CV084164DSFVBKX, 2010 WL 11519552 (C.D. Cal. Apr. 19, 2010) .......... 12
*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873(9th Cir. 2009) .......... 4
*Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364 n. 5 (9th Cir. 1989)4
*Reno-Tahoe Specialty, Inc. v. Mungchi, Inc*., No. LA16CV00663GHKAGR, 2018 WL 6267820 (C.D. Cal. Jan. 19, 2018) .......... 12
*Sch. Dist. No. 1J v. ACandS, Inc*., 5 F.3d 1255 (9th Cir. 1993) .......... 4
*Turner v. Burlington N. Santa Fe R.R*., 338 F.3d 1058 (9th Cir. 2003) .......... 4
*U.S. v. Stefani*, 338 Fed. Appx. 579 (9th Cir. June 17, 2009) .......... 7
*Veliz v. Cintas Corp.,* No. C 03-1180 RS, 2008 WL 4911238 (N.D. Cal. Nov. 13, 2008) .......... 6

**Statutes**

Fed. R. Civ. P. 56 .......... 5, 6
Fed. R. Civ. P. 59 .......... 3
Fed. R. Civ. P. 60 .......... 3
Fed. R. Evid. 803 .......... 7

# TABLE OF CONTENTS


I. INTRODUCTION .......... 2

II. RECONSIDERATION IS APPROPRIATE .......... 3

III. CONFLICTING EVIDENCE PRECLUDES SUMMARY JUDGMENT ON THE ISSUE OF AN INEQUITABLE RESULT .......... 5

- A. Reliance on Defendants' Revenues from Unsigned Draft Tax Returns to Prevail on Summary Judgment is Improper .......... 5
- B. Inferences Regarding Defendants' Transfers of Money Should be Drawn in Favor of UTW as the Non-Moving Party .......... 8

IV. The Court's Order is Inconsistent as to Whether the Individual Defendants are Dismissed Without or With Prejudice .......... 11

V. CONCLUSION .......... 13

PLEASE TAKE NOTICE that on May 19, 2026 at 10:00 a.m., or as soon thereafter as counsel may be heard, Plaintiff Under the Weather, LLC, ("Plaintiff" or "UTW") will hereby move for reconsideration of the Court's Order Granting Defendants' Motion for Partial Summary Judgment (Dkt. 213) or to alter or amend its Order under Fed. R. Civ. P. Rule 60 before the Honorable Mónica Ramírez Almadani in Courtroom 9B, 9th Floor of the United States District Court located at 411 West 4th Street, Santa Ana, California 92701.

The parties met and conferred on UTW's Motion for Reconsideration or to Alter or Amend the Order, on March 18, 2026. UTW asserted its position that the Court's Order Granting Defendants' Motion for Partial Summary Judgment (Dkt. 213) should be reconsidered or the Order should be altered or amended. UTW explained that the Court's determination that Alvantor and EighteenTek had amassed significant annual revenue and are sufficiently capitalized was in error. Further, UTW explained that it seeks to have the Order altered or amended to state that the Individual Defendants are dismissed without prejudice because in its analysis, the Court said that UTW's concern about an inequitable result was premature, and UTW would have the full complement of post-judgment remedies including alter ego available to it to enforce any judgment. Defendants disagreed with UTW's positions and represented that they intend to oppose this Motion. Because the parties were unable to reach a resolution, UTW hereby moves to reconsider or alter or amend the Court's Order Granting Defendants' Motion for Partial Summary Judgment (Dkt. 213).

The basis for UTW's Motion is explained in detail in the following Memorandum. UTW's Motion is supported by this Notice of Motion, the following Memorandum of Points and Authorities, as well as such other and further argument as may be presented at the hearing on this Motion.

//

//

Plaintiff Under the Weather, LLC ("UTW") hereby moves this Court for reconsideration of its Order Granting Defendants' Motion for Partial Summary Judgment (Dkt. 213) or to alter or amend its Order under Fed. R. Civ. P. Rule 60.

## I. INTRODUCTION

On March 5, 2026, this Court entered an Order granting Defendants' Motion for Partial Summary Judgment and dismissing Jianyong Wen, Lun Xu, and Xuduo Wen (collectively, the "Individual Defendants") from the case. The Court relied on its understanding that Alvantor Industry Company Ltd. and EighteenTek, Inc. (collectively, the "Corporate Defendants") had amassed significant annual revenue to find that there was no genuine issue of material fact as to whether there would be inequitable result from allowing the Individual Defendants to be shielded behind the corporate veil. However, this fact was disputed.

The Court's determination that the Corporate Defendants had amassed significant annual revenue and are sufficiently capitalized was in error. In order to reach this conclusion, the Court on summary judgment improperly resolved disputed issues of fact, drew factual inferences against UTW, the non-moving party, and made factual conclusions that were unsupported and contradicted by other evidence.

Defendants' unsigned and uncertified draft tax returns setting forth the alleged revenue numbers relied on by the Court are not admissible and will not be admissible at trial. Because the draft tax returns are unsigned and uncertified, and were not documents prepared by a government agency, they do not qualify for the public records exception to hearsay. Further, Jianyong Wen lacked personal knowledge regarding both the draft tax returns and Alvantor's and EighteenTek's revenues. Mr. Wen's declaration in support of summary judgment fails to establish that he has personal knowledge, and his deposition testimony shows that he actually does not have personal knowledge.

Further, it is undisputed that Alvantor and EighteenTek wired out large sums

of money in at least January 2025. In its Order, the Court relied on Defendants' representation in its briefing that these payments were made to a supplier in the regular course of business. But the evidence does not support this. The evidence Defendants cited to actually concerned ***different*** transactions. Accordingly, a reasonable inference from the large wire transfers of money to unknown accounts is that the Corporate Defendants are not currently sufficiently capitalized.

The evidence also showed that Defendants engaged in other suspicious activities relating to money transfers from their bank accounts after the initiation of this lawsuit. Drawing the inferences in UTW's favor, there is at least a genuine dispute of material fact as to the extent to which the Corporate Defendants have amassed substantial revenues and are sufficiently capitalized.

Lastly, in its analysis, the Court said that UTW's concern about an inequitable result was premature, and UTW would have the full complement of post-judgment remedies including alter ego available to it to enforce any judgment. However, in the conclusion of its Order, the Court said that the Individual Defendants were dismissed with prejudice. To avoid later confusion regarding whether the Individual Defendants can be added as alter ego defendants during post-judgment proceedings, if the Individual Defendants are dismissed, they should be dismissed without prejudice.

Accordingly, UTW requests that this Court vacate its Order granting Defendants' Motion for Partial Summary Judgment and allow UTW to have its day in court regarding whether the Corporate Defendants are the alter egos of the Individual Defendants. Alternatively, UTW requests that this Court revise the statement in the conclusion of the Order so as to state that the Individual Defendants would be dismissed ***without*** prejudice.

## II. RECONSIDERATION IS APPROPRIATE

Under Federal Rules of Civil Procedure 59 and 60, federal district courts may reconsider final orders to correct "manifest errors of law." *Turner v. Burlington N.*

*Santa Fe R.R.*, 338 F.3d 1058, 1063 (9th Cir. 2003). Parties must show either: (1) an intervening change in the law; (2) additional evidence that was not previously available; or (3) that the prior decision was based on clear error or would work manifest injustice. L.R. 7-18; *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n. 5 (9th Cir. 1989).

At summary judgment, the evidence should not be weighed to determine the truth, but instead the determination should be whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255.[1]

Here, reconsideration is appropriate because the Court's Order granting summary judgment was based on clear error and would work manifest injustice. At a minimum, there is conflicting evidence on whether the Corporate Defendants are sufficiently capitalized and have amassed significant annual revenue which precludes summary judgment on the issue of an inequitable result. Further, the Court's Order appears to contain an inconsistency in the concluding section, which states that the Individual Defendants are dismissed with prejudice. This statement is inconsistent with the analysis in the Court's Order, which confirms that UTW could raise the issue of alter ego again as a post-judgment remedy.

---

[1] In its Order, the Court stated, "Defendants argue that Plaintiff has not met its heavy burden of proof to show that the Court should overcome the presumption of corporate separateness and determine that the Individual Defendants are alter egos of the Corporate Defendants as a matter of law." Dkt. 213 at 10. However, Plaintiff UTW was not moving for summary judgment of alter ego. Instead, Defendants were moving for summary judgment of no alter ego. UTW did not have to establish that the Individual Defendants were the alter egos of the Corporate Defendants as a matter of law at this stage. UTW merely had to show that there was a genuine issue of material fact as to whether the Individual Defendants were the alter egos of the Corporate Defendants.

## III. CONFLICTING EVIDENCE PRECLUDES SUMMARY JUDGMENT ON THE ISSUE OF AN INEQUITABLE RESULT

### A. Reliance on Defendants' Revenues from Unsigned Draft Tax Returns to Prevail on Summary Judgment is Improper

In ruling on Defendants' Motion for Partial Summary Judgment, the Court found that the Corporate Defendants were sufficiently capitalized and amassed significant annual revenue by relying on Defendants' alleged revenue figures set forth in Mr. Jianyong Wen's Declaration and taken from Defendants' alleged draft federal tax returns for 2012-2023 for Alvantor and 2020-2023 for EighteenTek. Dkt. 213 at 3-4, 11-12. However, the Court's reliance on the draft tax returns and revenue figures set forth in Mr. Wen's Declaration was misplaced because the facts on which Defendants rely will not be admissible at trial.

The Court relied on the *Block v. City of Los Angeles* case to support that it can consider these revenue figures even though they were not presented in an admissible form. However, the court in *Block v. City of Los Angeles* stated, "[t]o ***survive*** summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block,* 253 F.3d 410, 418-19 (9th Cir. 2001) (emphasis added). Here, Defendants were moving for summary judgment, not trying to survive it.

Moreover, the declaration submitted by Mr. Wen is inadequate on its face and does not meet the requirements of Federal Rule of Civil Procedure 56. Dkt. 146-2. There are no facts in Mr. Wen's Declaration to support that he has personal knowledge of the draft tax returns or the revenue information therein. *Id.* Mr. Wen's Declaration contains no facts to support that he was in any way involved in the preparation of the draft tax returns. *Id.* In the *Block* case, the Ninth Circuit held that an affidavit not based on personal knowledge should be excluded from consideration on summary judgment because the declaration was inadequate under

Rule 56(e). In *Block*, the Ninth Circuit recounted that the affidavit at issue was "not made on personal knowledge, it did not set forth facts that would be admissible in evidence." *Id.* The court continued, "[i]t is clear from the affidavit that Menkus was not personally involved in any of the disciplinary suspensions, and that he did not personally review any business records containing information regarding such disciplinary suspensions." *Id.* Similar to the *Block* case, the evidence here showed that Mr. Wen was not personally involved in preparing or reviewing the draft tax returns or revenue information.

Specifically, Mr. Wen's Declaration merely states, "[s]ince 2012, I have retained the services of Lighthouse Consultants, Inc., a California based accounting firm, to prepare the annual state and federal tax filings for Alvantor and EighteenTek. The companies' tax documents, going back to 2012, have been produced to UTW during discovery, and disclose the companies' receivables and fixed assets." Dkt. 146-2 ¶ 17. Mr. Wen's Declaration goes on to list Alvantor's and EighteenTek's alleged revenues in a table format, without offering any information that suggests he has personal knowledge of these alleged revenue figures. Dkt. 146-2 ¶ 23. Mr. Wen's Declaration makes no assertions that he was personally involved in preparing the tax returns, provided any information to the accountant, or verified the accuracy of the information, and thus, the information contained in Mr. Wen's Declaration should not have been considered on summary judgment. *Block*, 253 F.3d at 419 (finding that it was "an abuse of discretion to consider the information contained in the Menkus declaration.")

Even if Defendants had made sufficient representations in Mr. Wen's Declaration to support that he had personal knowledge, these representations of personal knowledge would be directly contradicted by his deposition testimony. *See Veliz v. Cintas Corp.,* No. C 03-1180 RS, 2008 WL 4911238, at *12 (N.D. Cal. Nov. 13, 2008) (excluding from consideration on summary judgment certain portions of declarations that "lack personal knowledge, are not relevant, and/or

attempt to create issue of fact in contradiction to prior deposition testimony.") During his deposition, Mr. Jianyong Wen testified, "I don't know. I don't deal with the funds." Dkt. No. 171-19 at 58-59. He again testified, "I don't know. I don't handle the funds." Dkt. 178-6 at 65:12. He further testified, "[m]y wife is in charge of the money. I don't." Ex. 171-19 at 58-59. Accordingly, even if there were any meaningful representation of personal knowledge of the draft tax returns and revenues in Mr. Wen's Declaration (which there was not), such a representation should not be relied on to support summary judgment, as it would be directly contradicted by deposition testimony.

In Defendants' response to UTW's Evidentiary Objections, Defendants make the assertion that the evidence of Defendants' revenues and draft tax returns could be admissible through their accountant. However, Defendants' accountant is not on their witness list for trial, nor was the accountant disclosed in their Initial Disclosures or at any other point in discovery. Dkt. 189. The accountant also did not provide a declaration in support of summary judgment and was not made available for deposition. Thus, this evidence will not be admissible at trial through the accountant. It would be pure speculation to suggest that accountant could authenticate, let alone lay sufficient foundation to admit as evidence, the figures set forth in the drafts.

Further, Defendants' draft tax returns relied upon and produced in this case do not fall under the public records exception to the hearsay rule. Unlike in *U.S. v. Stefani*, Defendants' tax returns were not certified by the government. 338 Fed. Appx. 579, 581 (9th Cir. June 17, 2009). Further, the *Hughes v. U.S.* case (cited in *U.S. v. Stefani*) states that "Certificates of Assessments and Payments qualify as 'records, reports… or data compilations, in any form, of public offices or agencies, setting forth… matters observed matters observed pursuant to duty imposed by law as to which matters there was a duty to report,' and thus meeting one of the definitions of public records set forth in Fed. R. Evid. 803." 953 F.2d 531, 539 (9th

Cir. 1992). Here, the alleged evidence relied on by Defendants are not Certificates of Assessments and Payments which are issued by the government or copies of tax returns certified by the government. The draft tax returns certainly do not qualify as records, reports, or data of public offices or agencies setting forth matters observed pursuant to duty imposed by law. Federal Rule of Evidence 803(8) provides a hearsay exception for a "record or statement of a public office," if it meets certain conditions. Alvantor's and EighteenTek's unsigned and uncertified draft tax returns are not records or statements of a public office. If they had been signed and filed, they would have been statements of a taxpayer. They do not qualify for any hearsay exception.

Indeed, the draft tax returns produced and relied on by Alvantor and EighteenTek in this case were not even signed by Defendants, and it is unclear whether these are the tax returns that were even submitted to the government. Dkt. 146-2 at 59-71 (Ex. 11 showing Alvantor tax returns were unsigned, and thus excerpts from these same tax returns in Ex. 10 were unsigned) and 77-81 (Ex. 13 showing EighteenTek tax returns were unsigned and thus, excerpts from these same tax returns in Ex. 12 were unsigned). Alvantor and EighteenTek could have produced signed and certified tax returns during discovery, but they chose not to do so. Thus, these seemingly draft tax returns do not qualify as a record or statement of a public office and are not admissible under the public records exception.

Accordingly, the Court should not have relied on Mr. Wen's inadequate and contradicted testimony in his declaration or Defendants' unsigned and uncertified draft tax returns to show that the Corporate Defendants are sufficiently capitalized and have amassed significant revenue. As a result, summary judgment is improper, and the issue of whether there will be an inequitable result should be submitted to the jury.

**B. Inferences Regarding Defendants' Transfers of Money Should be Drawn in Favor of UTW as the Non-Moving Party**

Even if the draft tax returns and revenues for Alvantor and EighteenTek through 2023 were to have been considered, this evidence does not show that the Corporate Defendants currently have amassed "significant annual revenue" or that the Corporate Defendants are sufficiently capitalized. The draft tax returns only go through 2023.[2] This lawsuit was not initiated until October 2023. Dkt. 1. The draft tax returns do not provide any information on the status of Alvantor's and EighteenTek's accounts in 2024 and 2025, the years during which this lawsuit has been pending. In fact, there is evidence showing that after the initiation of the lawsuit the Defendants transferred substantial sums of money out of their accounts. Dkt. 213 at 6.

The limited evidence of Alvantor's and EighteenTek's finances in 2024 and 2025 show that Alvantor and EighteenTek are undercapitalized. It is undisputed that from January 16-17, 2025 Alvantor wired out $2,980,000 from Account No. "259-3239." Dkt. 178-2 ¶ 59; Dkt. 213 at 7. It is also undisputed that on January 22, 2025 EighteenTek wired out $1,330,000 from Account No. "259-3240." Dkt. 178-2 ¶ 60; Dkt. 213 at 7.

The evidence provided by UTW showed that these payments were made to unknown accounts. Dkt. 178-2 ¶¶ 59, 60; Dkt. 213 at 7. However, the Court relied on Defendants' misleading representation that these payments were made to their supplier in the normal course of business. Dkt. 213 at 7. Defendants' representation was wholly unsupported and is disputed.

The only alleged evidence relied on by Defendants in their Partial Motion for Summary Judgment to support that the payments were made to a supplier in the normal course of business are excerpts from Mr. Wen's deposition testimony—but that testimony related to a completely different transaction. Dkt. 178-2 ¶¶ 59, 60. The wires to the unknown account occurred in January 2025. The testimony to which Defendants cited to support the assertion that the transfer was to supplier

[2] Defendants could have produced their 2024 tax returns, but they did not do so.

related entirely to a transaction in March 2024.

In connection with the March 2024 transaction, Mr. Wen testified that, "[i]t's possible that we paid for goods, and we also have large payments for goods going out." Dkt. 178-7, Ex. 5. Further when Mr. Wen was asked who received the $2.63 million in this different transaction, he testified "I don't know. I'm not sure. You need to ask the bank."[3] *Id.* When asked about where the $2.63 million went during his deposition the day before, Mr. Wen testified "[m]y wife is in charge of the money. I don't." Dkt. 171-19 (59:8-14). This conflicting testimony is related to a completely different transaction and in no way supports that the wires out from Alvantor's and EighteenTek's accounts in January 2025 to an unknown account were payments made to suppliers. Defendants provided no evidence that the January 2025 transfers to unknown accounts were to suppliers.

Moreover, in UTW's Opposition to Statement of Uncontroverted Facts and Additional Material Facts, UTW included a fact regarding this March 2024 transaction that Mr. Wen was asked about in his deposition. Specifically, UTW included the following fact: "[o]n March 25, 2024, Alvantor's account ending in 0669 wired $2,630,000 ***to an Alvantor Account*** No. '250-03239.'" Dkt. 178-2 ¶ 55. Defendants did not dispute that the $2.63 million transfer was made to a different Alvantor account. *Id.* This undisputed fact directly contradicts Mr. Wen's testimony that this payment was made to a supplier.

In sum, Alvantor has never provided evidence that the $2.9 million transfer in January 2025 was to a vendor. Alvantor did, in fact, transfer the $2.9 million to

---

[3] During this deposition, Mr. Wen identified the possible supplier of goods as Leedor before then stating that he was unsure of the recipient. Dkt. 178-7, Ex. 5. Leedor is a Chinese entity that is affiliated with the Individual Defendants. Lun Xu is the owner of U.S. Trademark Registration No. 5577232 for LEEDOR. *See* https://tmsearch.uspto.gov/search/search-results/87672841. Accordingly, even if the payments were made to Leedor, this is not an arms-length transaction and shows a flow of money from the Corporate Defendants to a foreign company affiliated with the Individual Defendants.

an unknown account.

Moreover, statements such as "[i]t's possible" and "I don't know" about the destination of the money are insufficient to show a fact is undisputed and the benefit of the doubt should be provided to UTW. At a minimum, there is a genuine dispute of material fact as to whether the large payments made by Alvantor and EighteenTek in January 2025 were to a supplier in the normal course of business.

In addition, the evidence of other suspicious activity in Alvantor's and EighteenTek's bank accounts after the initiation of the lawsuit may not have been fully considered in evaluating whether there is a genuine issue of fact regarding an inequitable result. UTW provided undisputed evidence that, immediately after the initiation of this lawsuit, both Alvantor and EighteenTek transferred out large sums of money. Dkt. 178-2 ¶ 51.

Accordingly, drawing all reasonable inferences in favor of UTW, there is at least a genuine dispute of material fact as to whether the Corporate Defendants have engaged in suspicious activity with their bank accounts, including transfers of millions of dollars to unknown accounts, that should be decided by the jury. Thus, it would be reasonable to infer that an inequitable result could occur from allowing the Individual Defendants to hide behind the Corporate Defendants.

## IV. The Court's Order is Inconsistent as to Whether the Individual Defendants are Dismissed Without or With Prejudice

In the conclusion of the Court's Order on the Defendants' Motion for Partial Summary Judgment, the Court stated that "[t]he Individual Defendants are hereby DISMISSED from this action with prejudice." Dkt. 213 at 13. However, the analysis in the Court's Order regarding whether there would be an inequitable result confirms that UTW should be able to raise the issue of alter ego again should it have difficulty collecting on a judgment from the Corporate Defendants.

Specifically, in the Court's analysis on an inequitable result, the Court stated "if [Plaintiff] is unable to collect on any judgment it might obtain against [the

Corporate Defendants], it will have a full complement of post-judgment remedies that will enable it to enforce its judgment against [the Corporate Defendants] and any related entities." Dkt. 213 at 12. In support of this statement, the Court cited the *JT Legal Group APC v. Yagoubzadeh L. Firm LLP* case, which stated "if YLF's efforts to enforce a judgment against JT Legal are inequitably frustrated should it eventually prevail in this action, YLF could potentially pursue an alter ego claim against Ambrachyan or obtain other appropriate relief as a post-judgment remedy." No. CV 21-7033 PA(PDx), 2021 WL 9095879, at *4 (C.D. Cal. Dec. 17, 2021). Further, the Court noted that UTW's concern about an inequitable result is "premature." Dkt. 213 at 11. The Court's analysis supports that any dismissal of the Individual Defendants should be without prejudice.

Further, when courts dismiss alter ego theories, but acknowledge that the theory may arise again in light of changing circumstances, they dismiss such claims without prejudice so that the theory could be introduced again. *See Kayne v. Ho*, No. LACV0906816JAKCWX, 2012 WL 12878753, at *3 (C.D. Cal. Sept. 6, 2012) (dismissing complaint against an individual defendant included on an alter ego theory without prejudice to later add the party back into the case after further discovery); *King v. Najm*, No. CV084164DSFVBKX, 2010 WL 11519552, at *3 (C.D. Cal. Apr. 19, 2010) (striking alter ego theories "without prejudice, so long as [nonmovants] can raise alter ego arguments post-judgment"); *see also Reno-Tahoe Specialty, Inc. v. Mungchi, Inc*., No. LA16CV00663GHKAGR, 2018 WL 6267820, at *2 (C.D. Cal. Jan. 19, 2018) (denying motion to add individual as alter ego "without prejudice to [movant] conducting post-judgment discovery to obtain evidence to show [individual's] control of the underlying litigation and filing a renewed motion to add him as a judgment debtor.").

Thus, UTW requests that the Court, at a minimum, correct its statement in the conclusion that the Individual Defendants are dismissed with prejudice and confirm that the Individual Defendants are dismissed without prejudice.

## V. CONCLUSION

For the foregoing reasons, UTW requests that this Court allow UTW to have its day in court on the issue of alter ego. Alternatively, UTW requests that this Court correct its order to dismiss the Individual Defendants without prejudice.

Dated: March 19, 2026

FRIEDLAND CIANFRANI LLP

By: */s/ Nicole R. Townes*
Michael K. Friedland
Nicole R. Townes
Matt Pham
Attorneys for Plaintiff and Counterclaim-Defendant Under the Weather, LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff and Counterclaim-Defendant Under the Weather, LLC, certifies that this brief contains 4,294 words, which complies with the word limit of L.R. 11-6.1.

By: */s/ Nicole R. Townes*
Michael K. Friedland
Nicole R. Townes
Matt Pham
Attorneys for Plaintiff and Counterclaim-Defendant Under the Weather, LLC