Brian Yates (SBN 210667)
Xiyan Zhang (*Pro Hac Vice*)
xzhang@stratumlaw.com
Pete Wolfgram (*Pro Hac Vice*)
pwolfgram@stratumlaw.com
STRATUM LAW LLC
18 Campus Blvd. Ste. 100
Newtown Square, PA 19073

Attorneys for Defendants
JIANYONG WEN, LUN XU,
XUDUO WEN, ALVANTOR INDUSTRY COMPANY, LTD. and
EIGHTEENTEK, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNDER THE WEATHER, LLC, an Ohio limited liability company,<br><br>Plaintiff/Counterclaim Defendant,<br>v.<br><br>JIANYONG WEN, an Individual, LUN XU, an individual, XUDUO WEN, an individual, ALVANTOR INDUSTRY COMPANY, LTD., a California corporation, and EIGHTEENTEK, INC., a California corporation,<br><br>Defendants/Counterclaimants. | Case No. 2:23-cv-08343-MRA-E<br><br>**Date Action Filed: October 4, 2023**<br><br>**INDIVIDUAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT ORDER**<br><br>Judge: Honorable Mónica Ramírez Almadani<br><br>Date: May 19, 2026<br>Time: 10:00 a.m.<br>Crtrm.: B – 9th Floor |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................ 1

ARGUMENT ............................................................................................ 1

A. LEGAL STANDARD ............................................................................. 1

1. *UTW Failed to Comply with the Pre-Filing Meet and Confer Requirement Under Local Rule 7-3* .......................................................... 3

2. *UTW Has Failed to Demonstrate Any Clear Error or Manifest Injustice in the Court's Order Granting Partial Summary Judgment in Favor of the Individual Defendants.* ........................................................ 3

3. *UTW Repeats the Same Arguments in Violation of Local Rule 7-18.* ............ 5

a. The Corporate Tax Returns Did Not Materially Affect the Court's Finding that the Corporate Defendants' Are Adequately Capitalized. ............................ 9

4. *UTW Mischaracterizes the Order to Present New Arguments That Could Have Been Presented Earlier in the Litigation.* ...................................... 10

5. *Dismissal with Prejudice Was Proper* .................................................. 15

CONCLUSION ......................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**

*Block v. City of Los Angeles,*
253 F.3d 410, 419 n.2 (9th Cir. 2001)……………………………………………7

*Campion v. Old Republic Home Prot. Co.,*
No. 09-CV-748-JMA(NLS),
2011 U.S. Dist. LEXIS 54104 (S.D. Cal. May 20, 2011)……… ………………..2

*Carroll v. Nakatani,*
342 F.3d 934, 945 (9th Cir. 2003)……………………………………………..3,10

*Hopwood v. Texas,*
236 F.3d 256, 273 (5th Cir. 2000)……………………………………………...2

*Hughes v. United States,*
953 F.2d 531, 543 (9th Cir. 1992)………………………………………………6

*In re Energy Future Holdings Corp.,*
904 F.3d 298, 311–12 (3d Cir. 2018)…………………………………………12

*In re Packaged Seafood Prods. Antitrust Litig.,*
338 F. Supp. 3d 1118, 2018 U.S. Dist. LEXIS 151394 (S.D. Cal. 2018)………..9

*Inst. Of Veterinary Pathology, Inc. v. Cal. Health Labs, Inc.,*
116 Cal. App. 3d 111, 120 (1981)………………………………………………4

*Kona Enters., Inc. v. Estate of Bishop,*
229 F.3d 877, 890 (9th Cir. 2000)……………………………………………1,3

*McDowell v. Calderon,*
197 F.3d 1253 (9th Cir. 1999) (en banc)……………………………………1,2

*Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.,*
215 F.R.D. 581, 586 (D. Ariz. 2003)…………………………………………….3

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*,
866 F.2d 228, 233 (7th Cir. 1988)……………………………………………..2

*Roe v. LexisNexis Risk Sols, Inc.*,
No. CV 12-6284 GAF (Ex), 2013 U.S. Dist. LEXIS 195141, 2013 WL 12134002 (C.D. Cal. May 2, 2013)…………………………………………………………..16

*Shapoff v. Scull*,
222 Cal. App. 3d 1457, 1471 (1990)……………………………………………..4

*Sonora Diamond Corp. v. Superior Ct.*,
83 Cal. App. 4th 523, 836 (2000)……………………………………………...5

*Tawfilis v. Allergan, Inc.*,
2015 U.S. Dist. LEXIS 175629, 2015 WL 9982762 (C.D. Cal. Dec. 14, 2015)…..2

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*,
282 F.R.D. 216, 231 (D. Ariz. 2012)………………………………………………2

*Trust Corp. v. Aetna Casualty and Surety Co.*,
873 F. Supp. 1386, 1393 (D. Ariz. 1994)…………………………………………3

*Veliz v. Cintas Corp.*,
No. C 03-1180 RS, 2008 WL 4911238 (N.D. Cal. Nov. 13, 2008)………………7

**Rules & Statutes**

Fed. R. Civ. P. 59(e)……………………………………………………....1,2,3,16

Fed. R. Civ. P. 60(b)…………………………………………………………..2

Fed. R. Civ. P. 69(a)………………………………………………………….....15

Local Rule 7-3 (C.D. Cal.)………………………………………………..…3,4

Local Rule 7-18 (C.D. Cal.)…………………………………………....2,3,7,16

## INTRODUCTION

COMES NOW Lun Xu, Xudo Wen, and Jianyong Wen ("Defendants" or the "Individual Defendants"), by and through their undersigned counsel, and files this response in opposition to Plaintiff Under The Weather's ("UTW") motion for reconsideration.

## FACTUAL BACKGROUND

On March 5, 2026, the Court entered an Order granting partial summary judgment, dismissing UTW's alter-ego claims against the Individual Defendants with prejudice. ECF 213. On March 19, UTW filed its motion for reconsideration ("Motion") under Federal Rule of Civil Procedure 59, 60, without citing to a subsection of the rules. The Motion is wholly without merit, and simply repeats the same arguments raised in its original opposition to the partial summary judgment motion, or raises legal arguments which could and should have been made before the judgment was issued. On the whole, UTW's Motion simply disagrees with the Court's analysis in the March Order, which is not a sufficient basis for vacating a final judgment.

## ARGUMENT

### A. LEGAL STANDARD

A district court may grant a Rule 59(e) motion if it "is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999)(en banc) (internal quotation marks and citation omitted, cleaned up). Rule 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)(internal quotation marks and citation omitted).

While "[t]he Ninth Circuit has not defined a standard for 'clear error' under Rule 59(e), it has been discussed by other circuits." *Campion v. Old Republic Home Prot. Co*., No. 09-CV-748-JMA(NLS), 2011 U.S. Dist. LEXIS 54104, at *5 (S.D. Cal. May 20, 2011). As the Fifth Circuit described the standard, the decision must be "dead wrong." Id. (quoting *Hopwood v. Texas*, 236 F.3d 256, 273 (5th Cir. 2000)). Similarly, the Seventh Circuit has stated that to be clearly erroneous, a decision must strike the Court "'as more than just maybe or probably wrong'"; it must strike the Court "'as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988.) There is no clear error when the question at issue is debatable. *McDowell v. Calderon,* 197 F.3d 1253, 1999 U.S. App. LEXIS 32019, 99 Cal. Daily Op. Service 9363, 99 Daily Journal DAR 12100 (United States Court of Appeals for the Ninth Circuit. 1999). LexisNexis.

Courts in this district have interpreted Cal. Cent. Dist. Local Rule 7-18 to be coextensive with Rules 59(e) and 60(b). *Tawfilis v. Allergan, Inc.,* 2015 U.S. Dist. LEXIS 175629, 2015 WL 9982762, at *1 (C.D. Cal. Dec. 14, 2015). Cal. Local Rule 7-18 provides:

> "A reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." LR 7-18.

"A motion for reconsideration should not be granted, absent highly unusual circumstances . . . ."); Motions for reconsideration "are disfavored and are rarely

granted." *Trust Corp. v. Aetna Casualty and Surety Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994.) They should not be used to ask the court to "rethink what the court had already thought through—rightly or wrongly." *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). They "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in litigation," *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000), or merely repeat arguments previously made in support of or in opposition to a prior motion. *See Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003).

**1. *UTW Failed to Comply with the Pre-Filing Meet and Confer Requirement Under Local Rule 7-3.***

UTW's Motion does not comply with Central District of California Local Rule 7-3, which requires "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference *shall take place at least* seven (7) days prior to the filing of the motion." LR 7-3 (emphasis added). Here, it is undisputed that UTW waited until March 18, 2026 to attempt to contact Defense counsel by telephone—one day before UTW filed the Motion. See Motion, p. 2. UTW does not explain why it failed to comply with the local rule. UTW's unexplained breach of Local Rule 7-3 and gamesmanship alone warrant denial of the Motion, which exhaustively re-litigates the merits of Defendants' motion for partial summary judgment.

**2. *UTW Has Failed to Demonstrate Any Clear Error or Manifest Injustice in the Court's Order Granting Partial Summary Judgment in Favor of the Individual Defendants.***

There must be "direct evidence of specific manipulative conduct" for a Court to find an inequitable result under the second prong of the alter-ego analysis, as noted

by the Court. Order, p. 12, citing *Inst. Of Veterinary Pathology, Inc. v. Cal. Heath Labs, Inc*., 116 Cal. App. 3d 111, 120 (1981). "[A]buse of the corporate privilege by itself does not require that a court disregard the separate identity of a corporation." Order, p. 12, citing *Shapoff v. Scull*, 222 Cal. App. 3d 1457, 1471 (1990).

The Court determined that UTW had "not shown *why* the application of the alter ego doctrine is necessary to prevent harm to Plaintiff rather than the generalized wrong of misusing the corporate form." Order, pp. 12-13 (emphasis added). The Court reached this conclusion because UTW, in its initial and supplemental opposition to the motion for summary judgment, took some of the facts supporting its earlier arguments that the first, unity of interest prong was satisfied and simply moved them over as support for the fraud and injustice prong. *See* UTW's First Response in Opposition to Defendants Motion for Summary Judgment, at ECF 153-1, p. 22; *see also* UTW's Supplemental Response, ECF 171-1, p. 8.

Because UTW failed to identify an inequitable result, aside from the "generalized harm of misusing the corporate form," the Court was left to infer that "Plaintiff's concern appears to be that, if it ultimately succeeds in its trademark case against the Corporate Defendants, the Individual Defendants will transfer all assets out of the corporate accounts and somehow abscond with the money before Plaintiff is able to collect its judgment." Order, p. 12. The Court found this "potential, and premature concern…highly speculative," and insufficient to support an alter ego theory. Id. The Court supported this statement with the undisputed facts that the Corporate Defendants are "not in debt and have never failed to pay a creditor" in their entire business history. Id. It is also undisputed that "[t]he Individual Defendants created Alvantor and EighteenTek for the separate, legitimate business purpose of selling tents to the public," not as sham companies to avoid their creditors, and are still operating. Order., p. 10.

These undisputed facts, combined with UTW's repeated failure to directly state *why* it is necessary to pierce the corporate veil of a legitimate, solvent business competitor, provided the Court ample basis to find that UTW did not satisfy the second element. Accordingly, UTW falls far short of meeting the stringent standard for clear error. "A prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must be dead wrong." *Hopwood,* 236 F.3d at 273 (5th Cir. 2000)). UTW faced a heavy burden to begin with, as "alter ego is an extreme remedy, sparingly used." Order, p. 9, citing *Sonora Diamond Corp. v. Superior Ct*., 83 Cal. App. 4th 523, 836 (2000). At a minimum, parties are expected to clearly explain why the application of the alter-ego doctrine is necessary to prevent an inequitable result. UTW simply collapsed the prongs of the alter-ego test.

Nor can UTW show a manifest injustice under Rule 59(e). The Court stated, "if [Plaintiff] is unable to collect on any judgment it might obtain against [Defendants], it will have the full compliment of post-judgment remedies that will enable it to enforce its judgment against [the Corporate Defendants] and any related entities" under Federal Rule of Civil Procedure Rule 69(a). Order, p. 12, citing *Advanced Eng'g Sols. Co., LLC v. Pers. Corner, LLC*, No. CV 20-5955-JFW(PLAX), 2021 WL 1502705, at *6 (C.D. Cal. Feb. 25, 2021). Because UTW can seek to amend the judgment under Rule 69(a) if facts occurring after the judgment warrant application of the alter-ego doctrine, declining to pierce the corporate veils before then would not cause an inequitable result or manifest injustice—especially since there is no evidence in the record that the Corporate Defendants ever previously used the corporate forms to avoid a creditor or judgment.

**3. *UTW Repeats the Same Arguments in Violation of Local Rule 7-18.***

The Motion provides no newly discovered facts or change in law. Rather, the Motion largely reiterates UTW's arguments from its opposition to the Individual

Defendants' motion for partial summary judgment. Specifically, UTW claims it was clear error of law for the Court to consider the tax returns because "there are no facts in [the declaration of Jianyong Wen] to support that he has personal knowledge of the tax returns or the revenue information therein." Motion, pp. 8-9. Similarly, UTW claims the Court should not have considered Wen's statements concerning the companies' assets and revenues because they allegedly contradict his deposition testimony. Motion, pp. 9-10. As the Court noted, UTW does not dispute the revenue and asset figures substantively, only the admission of the tax records prepared by the Corporate Defendants' certified accountant. Order, p. 4, fn. 5.

UTW made essentially the same arguments at least six times in its original opposition. *See* ECF174-1, pp. 11-15, Plaintiff's Supplemental Response to Defendants' Statement of Uncontroverted Facts and Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law (referenced in the Order at p. 2, fn. 1): "The declarant, Jianyong Wen, confirmed he has no knowledge of this factual assertion [that Alvantor has over $4 million in net equity and assets, as confirmed by its most recent tax filings] during his deposition." *See also* ECF 155, pp. 3-7, UTW's Evidentiary Objections to the Declaration of Jianyong Wen.

The Court explicitly considered and overruled UTW's objections after considering "all evidence in the record, including *declarations* and documentary evidence." Order, p. 2, fn. 1 (emphasis added). The Court correctly stated, "at the summary judgment stage, the Court focuses not on the admissibility of the evidence's form but on the admissibility of its contents…the contents of the [tax returns] could be properly admitted through witness testimony at trial." Id. The Ninth Circuit applies this rule to declarations offered **in support of** and in opposition to motions for summary judgment, contrary to UTW's contention. *See e.g.*, *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992)(IRS litigation adviser's

affidavit, filed on behalf of the movant, was considered on summary judgment despite hearsay and best evidence rule objections; facts underlying affidavit were of type admissible as evidence even though affidavit itself may not be.) *See also Olympic Air*, *Inc. et al v. Helicopter Technology Company et al*, No. 2:2017cv01257 - Document 166 (W.D. Wash. 2022); *see also Lober v. Dejoy,* 845 Fed. Appx. 672, 2021 U.S. App. LEXIS 12500, 2021 WL 1627026 (United States Court of Appeals for the Ninth Circuit. Apr. 27, 2021.)

UTW also vaguely claims the Court "may not have fully considered" certain bank transfers made by the Corporate Defendants in 2023, without explaining how the Court could have done it better. Motion, p. 14. Regardless, the Court specifically considered these transactions. Order, pp. 5-7, 11. In short, UTW does exactly what Local Rule 7-18 prohibits—recycles arguments made in its original opposition.

Moreover, UTW's reliance on *Veliz v. Cintas Corp*. No. C 03-1180 RS, 2008 WL 4911238, at *12 (N.D. Cal. Nov. 13, 2008) is misplaced. *Veliz* involved the sham affidavit rule: "The declarations are inappropriate because parties cannot create issues of fact on summary judgment by submitting declarations to contradict the declarant's deposition or other sworn testimony." *Veliz*, No. C 03-1180 RS, fn. 12, citing *Block v. City of Los Angeles*, 253 F.3d 410, 419 n.2 (9th Cir. 2001). The sham affidavit rule is inapplicable in this instance because Wen's affidavit was not offered to create a genuine issue of material fact to oppose summary judgment. Further, UTW offers no explanation why it is presenting *Veliz,* a 2008 case, for the first time in a motion for reconsideration to support an argument that itself was previously considered and rejected by the Court.

While the Court should not be asked to revisit the merits of previously considered arguments in a motion for reconsideration, the Court correctly determined that Wen could provide trial testimony about the facts underlying the

disputed tax returns, i.e., the Corporate Defendants' assets and revenues. It is undisputed that Wen is the General Manager of both Alvantor and EighteenTek, as well as the Chief Financial Officer of Alvantor. Order, p. 3, citing ECF 174-1, ¶ 5. Wen's declaration states, "I am the General Manager of both Alvantor Industry Company, Ltd. and EighteenTek Inc., and my business duties include *oversight of sales,* customer relations, product development, research and development, and marketing." ECF 146-2, ¶ 2. (emphasis added.) As such, the Court could easily find that Wen has personal and direct knowledge of the Corporate Defendants' business operations, revenues (sales), and assets.

UTW, in support of the "domination and control" factor of the first element of the alter-ego test, argued that Wen and his wife, Lun Xu, have "complete control" over the Corporate Defendants' operations and finances: "Wen and Lu have complete control over the operations of Alvantor and EighteenTek and are the sole decisionmakers for these two entities." ECF 153-1, p. 21. "Lun Xu and Jianyong Wen are the only individuals with control over Alvantor's and EighteenTek's bank accounts." Id. "Lun Xu and Jianyong Wen are the only decision makers for Alvantor." Id. "[A]ll of the officers and directors of the Corporate Defendants are all members of the same immediate family." Id. "Jianyong Wen has claimed that he manages all of the operations of the two companies." Id. "The same accounting firm prepares the Corporate Defendants' tax returns and the individual defendants' tax returns." Id.

UTW cannot reasonably claim that Wen has complete control over the Corporate Defendants' operations and finances, yet somehow lacks knowledge of the companies' annual revenues and assets—which are vital to any business's survival—at trial. According to UTW, Wen and Xu are the only individuals that *could* provide testimony about the revenues. For that matter, the Court, after

reviewing all declarations in the record, properly found that Xu could also testify about the assets and revenues stated in the tax returns. She serves as Chief Executive Officer and Director of Alvantor and Assistant Secretary of EighteenTek. Order, p. 3. Because Defendants can establish Wen's and Xu's personal knowledge and lay proper foundation at trial, the Court is was not precluded from considering their Declarations on summary judgment.

a. <u>The Corporate Tax Returns Did Not Materially Affect the Court's Finding that the Corporate Defendants' Are Adequately Capitalized.</u>

The Court's decision to consider the revenues stated in the tax returns did not materially affect the outcome of the decision. The relevant inquiry for capitalization is not whether a company amasses significant sales revenues like the Corporate Defendants, but "whether defendant's capital was sufficient to operate its normal business." *See In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 2018 U.S. Dist. LEXIS 151394, at *102 (S.D. Cal. 2018) (wherein the Court, in granting summary judgment in favor of the individual defendants, found that the undercapitalization necessary to pierce the corporate veil was not shown in the absence of facts establishing that the corporate defendant could not meet its operating expenses).

Setting aside the tax returns, the Court supported its finding that the Corporate Defendants are adequately capitalized with several undisputed facts, namely that the "Corporate Defendants are not in debt and have never failed to pay a creditor." Order, pp. 11, 12. It is also undisputed that the Corporate Defendants have no unsatisfied judgments or liens, also noted by the Court. Order, p. 4. ECF 175-3, p. 30. The Court also noted the Corporate Defendants have collectively operated for over ten years, have their own line of products, and compete directly with UTW. Order, pp. 10-11. Further, the Court found only "minimal evidence of inadequate

capitalization" after reviewing the Corporate Defendants' bank balances, which often reached into the millions. Order, pp. 3, 6, 11. These facts alone, which the Court considered, are more than sufficient to establish that the Corporate Defendants can meet their ordinary business expenses.[1]

#### 4. *UTW Mischaracterizes the Order to Present New Arguments That Could Have Been Presented Earlier in the Litigation.*

The second basis of UTW's motion is that the Court erred by "**rel[ying]** on Defendants' [allegedly] misleading representation that [certain] payments were made to their supplier in the normal course of business. Defendants' representation was wholly unsupported and is disputed." Motion, p. 12 (emphasis added), citing Order, p. 7.[2] UTW is referring to two payments of $2,980,000 and $1,330,000 sent from the Corporate Defendants' bank accounts in 2025. Order, p. 7. UTW claims the Court erroneously "relied" on Defendants' statement as undisputed to draw a legal conclusion that the Corporate Defendants are sufficiently capitalized. Motion,

---

[1] The Court cited several other undisputed facts showing that the Corporate Defendants are legitimate businesses that can meet their ordinary business obligations: "The Individual Defendants created Alvantor and EighteenTek for the separate, legitimate business purpose of selling tents to the public," not as sham companies to avoid their creditors. Order., pp. 10-11. "When Alvantor was formed, it received $1,038,472 from its shareholders." Id., p. 3. The Corporate Defendants are corporate players in the tent industry with their own line of products that have amassed enough market share to pose a threat to UTW's business. Id., pp. 10-11. "The underlying trademark dispute would not have arisen between the parties otherwise." Id. "The Corporate Defendants have their own intellectual property." Id., p. 2.

[2] *See also* Motion, p. 6, "In its Order, the Court **relied** on Defendants' representation in its briefing that these payments were made to a supplier in the regular course of business…a reasonable inference from the large wire transfers of money to unknown accounts is that the Corporate Defendants are not currently sufficiently capitalized." (emphasis added.)

pp. 6, 12. The Court should have instead drawn an inference from the payments that the Corporate Defendants are "not currently sufficiently undercapitalized," and that an inequitable result "could occur" in consequence, according to UTW. Motion, pp. 12, 14.

UTW completely mischaracterizes the Court's analysis to relitigate the two 2025 payments, which the Court specifically considered. Order, p. 7. First, the Court did **not** treat Defendants' statements regarding the two wire transfers as "undisputed," as UTW alleges. The Court expressly recognized the payments were disputed, and clearly set out the parties' respective positions on the issue: "Plaintiff states that "Alvantor all but wiped out one of its bank accounts" from January 16-17, 2025 by wiring $2,980,000 out of the 6033 account to an "unknown" account ending in 3239"…."Defendants do not dispute that these transactions occurred but claim that these outbound transactions were payments to their supplier made during the course of business." Order, p. 7.

Second, the Court did not "rely" on Defendants' referenced statements to find the Corporate Defendants sufficiently capitalized. Order, pp. 10, 11. The Court made this determination based on different facts that *are* undisputed, discussed above. UTW's entire argument at Part "B" is based on a mischaracterization of the Order, and should not be considered—UTW has imputed a "clear error of law" to the Court that obviously never occurred.

Moreover, UTW did not previously present the two wire transfers as alleged evidence in support of the undercapitalization factor under the first element of the alter-ego test. As noted by the Court, UTW introduced the two payments in its supplemental response as alleged evidence of **commingling of funds**, or "**diversion of corporate funds to other than corporate purposes**," which are different factors

under the first element. Order, p. 5; [3] *See also* ECF 171-1, pp. 4-5, where UTW groups the 2025 payments together with a payment from Alvantor to Lun Xu's personal account, dated January 30, 2024, along with a purchase at a Louis Vuitton store on Alvantor's company credit card. The Court found a triable issue of fact under the unity of interest prong largely based on the commingling of funds factor. Order, p. 11.

UTW did not even argue the undercapitalization factor in its supplemental response, much less in connection with the two payments. The word "undercapitalized" doesn't appear once in the supplemental response. UTW also never mentioned the two payments in its initial response. UTW cannot reasonably expect the Court to draw an "inference" from the two payments that the Corporate Defendants are "not currently sufficiently capitalized" under the first element of the alter-ego test, and, going even further, make another inference that an unspecified inequitable result "could" somehow consequently occur under the second prong. UTW never made this argument in its original opposition, and cannot do so now in a motion for reconsideration. Even if is debatable whether an inequitable result might somehow occur—it is not, the Court correctly found UTW's unspoken concern premature and highly speculative—there would still be no clear error of law. "There is no clear error when the question at issue is debatable." *McDowell,* 197 F.3d 1253, 1999.

UTW claims that Jianyong Wen's statement, "it's possible that we paid for goods, and we also have large payments for goods going out" is contradictory because it allegedly refers to a transaction in 2024 of $2,630,000, not to the two

---

[3] *See* Order, p. 5, where the Court listed the two payments along with several other "significant transactions…which, according to Plaintiff, demonstrates improper comingling of funds sufficient to support an alter ego finding."

referenced payments in 2025. Motion, pp. 13, 14. Again, UTW offers no explanation why it could not have raised this argument earlier in its briefs or during oral argument; Mr. Wen's deposition transcript was available well before UTW filed its opposition to the summary judgment motion. Regardless, Wen's statement did not specifically "relate to" the 2024 wire transfer, as UTW claims. Mr. Wen clearly referred to the Corporate Defendants' **general** practice of sending large payments to its supplier in China—"we also have large payments for goods going out." Id (emphasis added). During Wen's deposition, UTW's counsel misidentified the outbound transaction in 2024 as going to an account ending in 3516, but this number referred to an "internal code" assigned by Merrill Lynch. Dkt. 178-7, Ex. 5. It is not an account number. Mr. Wen brought the error to UTW's counsel's attention: "If I remember correctly, this number [3516] is an internal code within Merrill Lynch. It's not an account name. I hope you can check with Merrill Lynch about it." Id. It is undisputed that UTW never even inquired about the two 2025 payments in discovery, whether by deposition or interrogatory request.

Because it was unclear what transaction UTW's counsel was even referring to, Mr. Wen stated, "it's possible that we paid for goods, and we also have large payments for goods going out." Id. This statement is consistent with the fact that the Corporate Defendants routinely made large outbound transfers for expenses and inventory both *before* and during this litigation commenced in 2023, including $1,681,805 in December 2020, $1,953,380 in June 2021, and $1,279,542 in July 2021. ECF 178-7, Ex. 6. Given UTW's own confusion on the transactions, it cannot show the Court committed a "direct, certain, [or] obvious error" as is required for reconsideration. *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311-12 (3d Cir. 2018) (citation modified). **Again, the Court did not even rely on Wen's disputed statements to find the Corporate Defendants sufficiently capitalized, discussed**

**above.** And even if the 2024 payment of $2.63 million went to an Alvantor account, rather than to its supplier, as UTW belatedly argues, this would not indicate that the Corporate Defendants are undercapitalized. If anything, it confirms the Court's finding that the Corporate Defendants maintained sufficient bank balances and accumulated significant revenue.

UTW claims the "draft tax returns do not provide any information on the status of Alvantor's and EighteenTek's accounts in 2024 and 2025, the years during which this lawsuit has been pending." Motion, p. 12. "The tax returns only go through 2023." Id. Setting aside the fact that the Corporate Defendants did not file their 2024 tax returns before the summary judgment motion (ECF 174-2, ¶ 25)—there is no reason why UTW could not have made this argument in its original opposition. UTW makes yet another new argument on previously available facts at footnote three of the Motion: "[E]ven if the payments were made to Leedor [the Defendants' supplier], this is not an arms-length transaction and shows a flow of money from the Corporate Defendants to a foreign company affiliated with the Individual Defendants." Motion, p. 13, fn. 3. This argument pertains to the unity of interest element, of which the Court found a triable issue of fact. The argument serves no purpose, other than to expand on previously considered arguments.

Moreover, UTW claims the disputed tax returns do not fall under the public records exception to the hearsay rule because they are allegedly not certified or signed. Motion pp. 10-11. Again, UTW never explains why it did not make this argument earlier. Defendants produced the tax returns at UTW's request well before briefing on the summary judgment motion concluded. In fact, UTW extensively relied on the same disputed tax returns to support its claim that the Individual Defendants "commingled personal and corporate funds and assets and diverted corporate funds to personal purposes" under the unity of interest element. *See* ECF

153-1, p. 16; *See also* UTW's Supplemental Statement of Uncontroverted Facts, ECF 175-3, pp. 35-38, citing to the disputed tax returns. Further, Defendants presented argument that the tax returns, which in any event did not materially affect the outcome of the decision, fall under the business records exception to the hearsay rule. ECF 168-2, pp. 6-8.

**5. *Dismissal with Prejudice Is Proper***

Dismissal of the Individual Defendants with prejudice is consistent with the Court's reference to *Advanced Eng'g Sols. Co.* Order, p 12. Summary judgment is a final adjudication on the merits, which is why courts routinely dismiss claims with prejudice at that stage of the litigation. Otherwise parties could simply refile claims based on the same facts to get a second bite at the apple, effectively rendering summary judgment orders moot. Based on the current record, UTW has failed to raise a genuine issue of material fact on the alter ego claims. However, if UTW's infringement claims ultimately succeed against the Corporate Defendants, it could seek amendment of the final judgment to add new alter ego claims against the Individual Defendants under Federal Rule of Civil Procedure 69(a) (cited by the Court) based on conduct arising after the initial judgment. The doctrine of *res judicata* does not apply to new facts that had not yet occurred at the time of the judgment. *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955). The Court, in describing UTW's unstated concern that the Corporate Defendants might try to avoid a potential judgment as "premature," indicated that UTW could potentially avail itself of this post-judgment remedy provided under Rule 69(a) if subsequent events warranted application of the alter-ego doctrine. Order, p. 12. Dismissal with prejudice here is thus consistent with *Advanced Eng'g Sols. Co.* and Rule 69(a).

## CONCLUSION

For the foregoing reasons, UTW's Motion does not demonstrate the "highly unusual circumstances" necessary for reconsideration, and should be denied. UTW's Motion simply disagrees with the Court's analysis, which is not a sufficient basis for vacating a final judgment.

Date: April 28, 2026

Respectfully submitted,

By:/s/ Xiyan Zhang
Xiyan Zhang (*Pro Hac Vice*)
Pete S. Wolfgram (*Pro Hac Vice*)
STRATUM LAW LLC
18 Campus Blvd. Ste. 100
Philadelphia, PA 19073
Xzhang@stratumlaw.com
pwolfgram@stratumlaw.com
*Attorneys for Individual Defendants Jianyong Wen, Lun Xu, and Xuduo Wen, Alvantor Industry Company Ltd.*